In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1656

Abuzaffer Basith,

Plaintiff-Appellant,

v.

Cook County,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 5596--Ann Claire Williams, Judge.

Argued November 2, 2000--Decided March 6, 2001



Before Manion, Kanne, and Evans, Circuit Judges.

Manion, Circuit Judge.  Abuzaffer Basith sued
Cook County, his employer, for discriminating
against him in violation of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. sec.
12112(a), and for retaliation in violation of
Title VII, 42 U.S.C. sec. 2000e. The district
court granted summary judgment for Cook County on
both claims. Basith appeals. We affirm.

I.

On July 15, 1987, Abuzaffer Basith was hired for
the position of Pharmacy Technician II in the
Inpatient Division of the Pharmacy Department at
Cook County Hospital. Basith was assigned to the
clean air room, which required him to perform a
variety of tasks, including preparation of
intravenous solutions, and delivery and stocking
of medications.

Unfortunately Basith's job was interrupted by
several injuries and resulting physical
limitations. On July 12, 1991, Basith injured his
right leg in a car accident. After nearly ten
months of taking medical leave, Dr. Robert
Collins released Basith to return to work with
several restrictions. For ten weeks Basith was
not to stand for more than 10 minutes at a time,
walk more than 50 yards at a time, or lift more
than 10 pounds. He was also restricted from
bending, stooping, crouching, twisting, climbing,
squatting, or kneeling. Upon returning to work,

Basith reported to Dr. Zachary Powell at Employee Health Services at Cook County Hospital, who completed a disposition form noting his restrictions. However, based on these restrictions, the Associate Director of the Pharmacy Department, LuAnn Dodini, refused to allow Basith to return to work. Thus he did not work from April to June 22, 1992. On June 22, 1992, Dr. Powell established new restrictions, to be effective through August 4, 1992. Among other things, these restrictions limited Basith from: lifting, carrying, pushing and pulling over 20 pounds; lifting fifteen pounds overhead; bending, stooping and climbing; and spending more than one-third of a day standing or walking. After Dodini determined that Basith could return to work with his new restrictions, he returned to his original position on June 22, 1992.

About three weeks later, Basith wrote Dodini a letter requesting a shift change because his current shift required him to stand and move too much. At his request he was given a handicapped parking sticker which required a showing that he could only walk a maximum of 200 feet at one time. However, Dodini prohibited Basith from working as a Pharmacy Technician II on any shift because of the walking limitation. The hospital later concluded that Dodini's concern was "a bureaucratic issue more than a medical issue," and on August 8, 1992 he returned to work as a Pharmacy Technician II. Basith filed a successful grievance with Cook County for the salary he lost during the three-week period he was prohibited from working.

Then, on August 12, 1992, Basith reported a second injury when he fell from a chair at work. He required additional surgery, and took a one-year medical leave of absence. Basith was finally released to work on July 12, 1993, with restrictions in effect until August 4, 1993. The restrictions prohibited him from more than minimal walking and from lifting over 10 pounds. Because of these new restrictions, Dodini informed Dr. Powell that Basith could not work as a Pharmacy Technician II; thus he remained on medical leave of absence. Basith returned to Employee Health Services on August 4, 1993, with the same lifting and walking restrictions. But Dodini told Dr. Powell that Basith could not work in his old position with these restrictions. Thus he remained off work.

On December 14, 1993, Basith's personal physician issued permanent restrictions. Basith was restricted from walking, bending, or stooping more than minimally and from lifting over 10 pounds. On January 19, 1994, Cook County offered Basith a new Pharmacy Technician II position in

the recently opened operating room pharmacy at Cook County Hospital. The Director of the Pharmacy Department, Dennis Hays, agreed to have storeroom personnel deliver stock to the elevator outside the operating room pharmacy in light of Basith's walking restrictions. Basith accepted the position on March 14, 1994, but he left a few days later, claiming that Cook County "wasn't accommodating him enough."

On May 20, 1994, Basith and his union representative met with Hays to discuss Basith's desire to return to work in the clean air room. Hays agreed to create a special assignment for Basith in the clean air room where he would be responsible for making intravenous "piggyback" solutions which did not require him to do delivery, stocking, or cleaning. Basith accepted the new position.

But Basith was still not satisfied. On February 28, 1995, Basith filed a grievance because he had not been offered an opportunity to cover overtime shifts in the clean air room. But, as Hays explained, the overtime shifts required employees to deliver and stock medications (which Basith could not do with his limitations), and no overtime was needed to make intravenous piggyback solutions. Therefore Basith was not offered overtime.

On January 19, 1996, Basith incurred a third injury, this time by striking his right knee on a cart at work. This resulted in another medical leave of absence. After several weeks Dr. Ira Kornblatt released Basith to return to his job without restrictions. On April 4, 1996, Employee Health Services approved Basith for return to work but with restrictions that he not crouch, squat, kneel, or crawl more than one-third of the day. The same day, Candace Richardson, Hays' successor as Director of the Pharmacy Department, informed Basith that she would reevaluate his assignment in light of the new restrictions. On April 25, 1996, she informed Basith that she would expand his assignment to include other shifts beyond his special assignment, beginning June 7, 1996.

On June 7, 1996, Basith reported another knee injury, and he took his fourth medical leave of absence. Dr. Kornblatt determined that he could return to the normal job activities of a pharmacy technician without restrictions. Basith did not return to work, however. On July 16, 1996, one of Basith's attorneys requested that Cook County reasonably accommodate Basith by assigning him only profiling tasks, which involve data entry, for a month until he underwent surgery. Cook County responded that it could not do so because

only registered pharmacists could perform profiling tasks, and Basith was not qualified.

On January 3, 1997, Richardson sent a letter to Basith stating that he had exhausted his sick and vacation time, and informing him that he should report to the Department of Human Resources regarding an appropriate medical leave of absence. Basith's attorneys and Cook County subsequently agreed that Basith should have an independent medical examination. The parties selected Dr. Morgenstern, who recommended that Basith perform a "mostly sitting" job. Cook County offered Basith a position in the acquisitions area of the Pharmacy Department, which he accepted. Basith returned to work on July 29, 1997, and is apparently still employed in this position.

As these injuries occurred during his employment, Basith filed periodic charges with the Equal Employment Opportunity Commission ("EEOC") which form the basis of this case. On July 7, 1992, Basith filed his first claim alleging that in April and May of 1992, Cook County discriminated against him based on his physical handicap and sex. At the time of filing Basith had recently returned from a ten-month leave of absence due to a leg injury from an automobile accident. The EEOC issued a right-to-sue letter on September 8, 1995. In the meantime, on August 2, 1995, Basith filed another charge claiming that from September 1994 through May 1995 Cook County discriminated against him based on race and disability in denying him overtime opportunities. The EEOC issued a right-to-sue letter for this charge on January 31, 1996. On February 18, 1997, Basith filed a charge claiming that on June 7, 1996, the date of his fourth reported injury (knee), Cook County discriminated against him based on race, sex, national origin, and disability, and retaliated against him. It appears that the race, sex, and national origin charges have been dropped. The EEOC issued a right-to-sue letter for this charge on March 31, 1997.

On August 20, 1997, after filing several complaints with the district court, Basith filed a First Amended Consolidated Complaint, which combined claims from all of the charges he had filed with the EEOC. Basith sought relief under the ADA for discrimination based on a disability and under Title VII for retaliation. The district court granted Cook County's Motion for Summary Judgment on both claims. We affirm.

II.

"We review the district court's entry of summary

judgment de novo," Miller v. American Family Mutual Insurance Co., 203 F.3d 997, 1003 (7th Cir. 2000), and we will view all of the facts and draw all reasonable inferences in favor of the nonmoving party. See id. Summary judgment is proper if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The plaintiff "cannot merely allege the existence of a factual dispute to defeat summary judgment." McPhaul v. Bd. of Comm'rs of Madison County, 226 F.3d 558, 563 (7th Cir. 2000). Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor. See id.

A.  ADA Claim

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a). In addition, "[t]he Act also provides that an employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" McPhaul, 226 F.3d at 563 (quoting 42 U.S.C. sec. 12112(b)(5)(A)). Thus, under the ADA, there are two distinct categories of disability discrimination claims: failure to accommodate and disparate treatment. See Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1021-22 (7th Cir. 1997). In a reasonable accommodation case, like the present one, the plaintiff must first show that: 1) he was disabled; 2) his employer was aware of his disability; and 3) he was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position. See McPhaul, 226 F.3d at 563.

The district court concluded that Basith presented sufficient evidence to suggest he was disabled from June, 1991 forward. Nevertheless, the district court granted summary judgment to Cook County on the ADA claim, concluding that Basith was unable to perform the essential functions of the Pharmacy Technician II position with or without reasonable accommodation. Basith argues that he presented sufficient evidence to establish that he was a qualified individual with a disability, and that Cook County violated the ADA by failing to provide him with a reasonable accommodation. We address each argument in turn.

1.  Qualified individual with a disability.

The ADA only protects a "qualified individual with a disability." To determine whether someone is a "qualified individual with a disability," we apply a two-step test. See 29 C.F.R. app. sec. 1630.2(m). "First, we consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.'" Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996) (quoting 29 C.F.R. app. sec. 1630.2(m)). "If he does, then we must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'" Id. (quoting same). There is no question in this appeal about Basith's background. At issue is Basith's ability to perform the essential functions of his job.

Basith argues that, with reasonable accommodation, he could perform all of the essential functions of the Pharmacy Technician II position. The district court, however, found that delivery and stocking of medication were essential functions of the Pharmacy Technician II position, and that the job required some walking and lifting of boxes of medications and supplies which weighed up to 20 pounds. In light of his medical restrictions, the district court held that Basith could not perform these functions, and was therefore not a "qualified individual with a disability."

To determine the essential functions of a position, a court may consider, but is not limited to, evidence of the employer's judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs. See 29 C.F.R. sec. 1630.2(n)(3).

In April of 1989, Cook County had set forth the following job description for the Pharmacy Technician II position:/1

Must be able to work in a sedentary position for long hours, to walk or stand for 4-8 hours daily, to do occasional lifting of objects of up to 50 pounds, to climb, stoop, or crouch, and to push loaded delivery carts and trucks up a 15% grade on ball casters.

A Cook County "Essential Job Function" form also described both delivery and stocking as essential

functions. Thus, according to both the job description and the essential job function form, delivery of medication was an essential function.

Basith argues that we should not rely on the Cook County job description forms because these documents were not "written job descriptions prepared before advertising or interviewing applicants for the job," which he alleges is mandated by 29 C.F.R. sec. 1630.2(n)(3)(ii). However, this argument overstates the requirements of the regulation, which itself states that acceptable evidence "is not limited to" the listed examples for determining essential functions. See 29 C.F.R. sec. 1630.2(n)(3). It does not limit the court's consideration of written job descriptions to ones prepared before advertising or interviewing for the job. To the contrary, the very first example of acceptable evidence under the regulation is the employer's judgment, and the written job descriptions are clearly instances of the employer's judgment as to which functions are essential. Also, the job descriptions pre-dated Basith's first injury. Moreover, the "Essential Job Function" form was completed by six Pharmacy Department employees, and the regulation lists work experience of current and past incumbents on the job as examples of acceptable evidence.

Basith contends that the district court erred because it allegedly did not consider his affidavit and the affidavit of a co-worker regarding the functions of the job. These affidavits, however, do not offer any evidence that conflicts with the essential job functions as defined by Cook County. Basith's affidavit simply states the following: "That at all times relevant to my case, the duties of a pharmacy Technician II in the clean air room were sedentary or light duty in nature with the exception of delivery of intravenous piggybacks which required approximately 45 minutes to one hour per shift." This general statement does not provide any evidence that delivery was not essential, and in fact demonstrates that Basith himself viewed delivery as part of the job. In any event, conclusory allegations and self-serving affidavits, unsupported by the record, will not preclude summary judgment. See Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997).

Basith also submitted the affidavit of a co-worker, Habeeb Al-Aidroos, who stated that "the task of delivery in the clean air room requires approximately 45 minutes to one hour during an 8-hour shift; the remaining tasks of a pharmacy technician II in the clean air room require little walking, little standing and little

lifting." This statement does not provide evidence that delivery was not essential. Moreover, "[a]lthough we look to see if the employer actually requires all employees in a particular position to perform the allegedly essential functions, we do not otherwise second-guess the employer's judgment in describing the essential requirements for the job." See DePaoli v. Abbott Laboratories, 140 F.3d 668, 674 (7th Cir. 1998) (citations omitted). See also E.E.O.C. v. Amego, Inc., 110 F.3d 135, 147 (7th Cir. 1997) (same). The affidavits Basith presented are insufficient to overcome this deference. The plaintiff must offer sufficient evidence to show the employer's understanding of the essential functions of the job is incorrect, and Basith has not done so. See Martinson v. Kinney Shoe Corp., 104 F.3d 683 (4th Cir. 1997) (adopting employer's judgment of essential function where plaintiff failed to provide any evidence at summary judgment stage to dispute employer's understanding of essential functions); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995) (same).

In addition, Basith argues that delivery is not an essential function of the Pharmacy Technician II position because it takes up only 45 minutes to an hour of an 8-hour day. But an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential./2 See, e.g., Miller v. Illinois Dep't of Corrections, 107 F.3d 483 (7th Cir. 1997). Rather, an essential function must be a fundamental duty of the job. See 29 C.F.R. sec. 1630.2(n).

We addressed a parallel situation in Miller v. Illinois Dep't of Corrections. In Miller, this court held that a blind correctional officer who could not stand guard or count inmates was not qualified under the ADA, even though she could perform other essential functions. As the court noted, "if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." 107 F.3d at 485. We held in Miller that the duties were essential functions because the prison had a valid reason (the prevention of riots) for requiring all of its guards to be able to perform them. See id.; see also Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1527 (11th Cir. 1997) ("Even assuming that an Alpharetta police detective spends a relatively small amount of time performing the type of field work that Holbrook

concedes he cannot undertake, the record establishes--and Holbrook has not proven to the contrary--that the collection of all evidence at the scene of the crime is an essential function . . . ."). In this case, the evidence established that delivery of medication to the patients is essential to the functioning of the pharmacy, and Cook County determined that the Pharmacy Technician II was the best position to fulfill this need. Cook County's valid reason for treating delivery as an essential function--the needs of the pharmacy's patients--renders the limited time devoted to delivery irrelevant.

Basith also argues that delivery is not an essential function of the Pharmacy Technician II position because there are other ways to deliver medication, namely that other hospital employees deliver the medication. In other words, if Basith can't deliver, someone else must do so. It is possible that any function, whether or not essential, could be assigned to additional employees. The mere fact that others could do Basith's work does not show that the work is non-essential.

Cook County is allowed to determine the job responsibilities of its pharmacy technicians, and it is not this court's duty to second-guess that judgment so long as the employer's reasons are not pretextual. See Depaoli, 140 F.3d at 674. In effect, Basith is asking to assign to someone else the duties of his position. However, "[a]n employer need not reallocate the essential functions of a job, which a qualified individual must perform." Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112-13 (8th Cir. 1995). See also Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996) ("Nor is an employer obligated to create a 'new' position for the disabled employee."). In fact, Basith's suggestion would result in a restructuring of both his job and the jobs of other employees. This is not required by the ADA. See Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000) (Rehabilitation Act case affirming summary judgment for defendant because "[t]wo new jobs would have to be manufactured, one for [the employee] and one for his helper.").

Finally, Basith claims that delivery was not an essential function because Hays had created a position for him in May 1994 which did not require delivery. But this evidence merely shows the job could be restructured, not that delivery was non-essential. In fact, at the time Hays created a position for Basith, he stated he felt he was going beyond ADA requirements. See Def. Ex. 27 ("Although this is a change in the job functions, which is not required, I will agree to

it."). Absent independent evidence that the function was non-essential, we do not believe it wise to consider the special assignment as proof that delivery was not an essential function because it would punish Cook County for going beyond the ADA's requirements. See, e.g., Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir. 1997) ("Employers should not be discouraged from doing more than the ADA requires. . . ."); Vande Zande v. State of Wis. Dep't. of Admin., 44 F.3d 538, 545 (7th Cir. 1995) ("[I]f the employer . . . bends over backwards to accommodate a disabled worker--goes further than the law requires . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."). The fact that restructuring is feasible, in itself, is not persuasive evidence one way or the other that a function is essential to a job.

In sum, the evidence established that delivery was an essential function. The evidence also established that Basith could not perform the delivery function without some kind of accommodation, although Basith suggests he could perform deliveries with a motorized wheelchair with a carrying basket, and the regulation does define a "qualified individual with a disability" as an individual who can perform the essential functions of the job with or without accommodation./3

Basith provides no evidence to substantiate this claim, such as a report from his doctor that he could fully perform the delivery function with his proposed wheelchair. Compare Whitbeck v. Vital Signs, Inc., 116 F.3d 588 (D.C. Cir. 1997) (denying summary judgment under similar statute where plaintiff provided evidence that employer rejected accommodation of a motorized cart and plaintiff's doctor believed she could perform work duties with this accommodation). There is no evidence in the record that a motorized wheelchair has ever been used for this purpose at the pharmacy, and we have no indication whether a wheelchair would actually allow Basith to surmount the various hurdles of the delivery function--e.g., pushing delivery carts and trucks up a 15% grade on ball casters. For that matter, Basith offers no evidence that a wheelchair would enable him to perform the job within a reasonable amount of time.

Basith's bare assertion that a wheelchair would accommodate his inability to perform delivery of medications is sheer speculation. Standing alone, Basith's allegation that he could perform the essential function of delivery with a wheelchair is not enough to create a material issue of fact.

Accordingly, we affirm the district court's conclusion that Basith was not a "qualified individual with a disability" because he could not perform the essential function of delivery.

We also affirm the district court's conclusion that Basith could not perform the essential function of stocking medications due to his lifting restrictions. On appeal, Basith does not dispute that stocking was an essential function. Instead, Basith claims that he could do all of the lifting needed to perform the Pharmacy Technician II position.

In addressing Basith's argument, we initially note that the plaintiff has the burden of showing that he can perform the essential functions of the job, with or without a reasonable accommodation. See Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1284 (7th Cir. 1996). On appeal, Basith argues that to perform the stocking function he only needed to be able to lift 20 pounds, which Basith contends he could do. Hays did testify that Cook County reduced the lifting requirement to 20 pounds in the late 1980's.

The question is thus whether Basith presented evidence that he could lift 20 pounds. It is clear that Basith could not perform the 20-pound lifting requirements of his stocking duties during the times when his restrictions limited him to no more than 10 pounds, from April 1992 through June 22, 1992, from July 12, 1993 through August 4, 1993, and from December 14, 1993 forward. Moreover, we have Basith's own affidavit, which states:

That at each time I requested to return to work for the defendant from March, 1992 through the present I was physically able to perform all of the tasks of a Pharmacy Technician II assigned to either the clean air room or the pediatric pharmacy including deliveries but with the exception of the occasional lifting for a large supply bottle. . . .

Pl. Ex. 1. Although Basith claims he could perform all of the tasks of a Pharmacy Technician II, including the lifting requirements, he has not met his burden of showing he could perform the essential function of stocking medication during the time periods when his medical restrictions limited him to lifting no more than 10 pounds. His own affidavit suggests he was incapable of performing the essential task of stocking medications at that time, and the mere statement that he could perform all tasks is not sufficient evidence to survive the summary judgment motion. See Haywood, 121 F.3d at 1071.

Accordingly, Basith was not a "qualified individual with a disability" during those time periods because he was restricted from lifting more than ten pounds and thus could not perform the essential functions of a Pharmacy Technician II.

From June 22, 1992 through August 4, 1992, Basith's medical restrictions permitted him to lift up to 20 pounds. However, Basith never filed a charge with the EEOC respecting that time period. He complained to the EEOC that he was discriminated against in April and May of 1992, and he complained to the EEOC that he was discriminated against beginning August 5, 1992, but he did not file a charge with the EEOC regarding his treatment between June 22 and August 4 when his restrictions permitted him to lift up to 20 pounds./4

Assuming that Basith's argument that he could lift 20 pounds and thus perform the stocking function is based on the time period when his restrictions permitted him to lift 20 pounds, this failure to exhaust his administrative remedies by filing an EEOC claim is fatal to Basith's argument. See, e.g., Stewart v. County of Brown, 86 F.3d 107, 110 (7th Cir. 1996) ("In order to recover for violations of Title I of the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged violation (if he does not file an initial charge with a state agency)."). Since the only time Basith arguably was able to perform the essential function of stocking is barred, we affirm the district court's holding that Basith was not a "qualified individual with a disability."

2. Reasonable accommodation.

Basith argued that Cook County violated the ADA because it failed to provide him with a reasonable accommodation for his disability. We need not decide whether Basith was denied reasonable accommodation in light of his failure to show a question of fact existed as to whether he was a "qualified individual with a disability." See Bombard, 92 F.3d at 563. Assuming, arguendo, that Basith were able to perform the essential functions of the Pharmacy Technician II position with a reasonable accommodation, however, we would still affirm the district court's decision that Cook County accommodated Basith's disability.

During much of the time at issue in this case, Basith was on medical leave of absence, and the district court held that this qualifies as a

reasonable accommodation. See 29 C.F.R. sec. 1630(o), App. We agree with this holding. Basith challenges the district court's holding that when he was not on medical leave the special assignment in the clean air room was a reasonable accommodation. Basith argues that the clean air room assignment was not a reasonable accommodation because he did not have overtime or holiday shift opportunities (the overtime and holiday shifts would have required Basith to perform deliveries), and contends that Cook County should have restructured the job so that other employees could perform the delivery function during an overtime shift, or else allowed him to use a wheelchair for deliveries.

We find that Cook County went above and beyond the requirements of the ADA in creating Basith's special assignment. As noted above, an employer is not required to reallocate the essential functions of a job. See Gile, 95 F.3d at 499. Yet Cook County did so, and thus Basith was able to work a regular shift in the clean air room without performing the deliveries which his disability precluded. Cook County need not restructure further (especially when evidence suggests there was no need for overtime performance of Basith's duties), so that Basith could work an overtime shift. As the district court noted, "[Cook County] should not be held liable for its reasonable refusal to create special assignments that would include overtime and holiday work for Basith." Basith, 2000 WL 246255 at *11. And, since the clean air room assignment accommodated Basith's disability, Cook County was under no duty to provide a different accommodation, such as the proposed wheelchair. Accordingly, even if Basith were able to perform the essential functions of the Pharmacy Technician II position with accommodation, his ADA claim would fail.

B.  Title VII Retaliation Claim

Basith also claims that Cook County retaliated against him for his charges of discrimination with the EEOC by refusing to allow him to return to work and by refusing to allow him to work overtime in his special assignment. It is unlawful under Title VII "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. sec. 2000e-3(a). Absent direct evidence of discriminatory intent, "a claim of retaliation is examined 'using the familiar McDonnell Douglas burden shifting analysis.'" Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1146 (7th Cir. 1997) (quoting McKenzie v. Illinois Dep't. of Transp., 92 F.3d 473, 483 (7th Cir. 1996)). See

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973). Under McDonnell Douglas, Basith must first establish a prima facie case of retaliation. If he succeeds, Cook County must present a legitimate, non-retaliatory reason for its actions. If Cook County provides a legitimate, non-retaliatory reason, then Basith must show that Cook County's reasons were pretextual. See Gleason, 118 F.3d at 1146.

To establish a prima facie case of retaliation, Basith must establish that 1) he reported or otherwise opposed conduct prohibited by Title VII; 2) he suffered an adverse, job-related action; and 3) there is a causal link between his opposition to unlawful discrimination and the adverse action. See id. The district court found that Basith had met the first element needed to establish a prima facie case, but that he failed at step two because his allegations of adverse job-related actions were unsupported by the record.

Basith argued before the trial court that he suffered two adverse, job-related actions in retaliation for his protected speech: Cook County's refusal to allow him to return to work for several periods between April 1992 and July 1997, and Cook County's refusal to allow him to work overtime in his special assignment. Basith's argument on appeal is cursory at best. He does not explain how these were adverse, job-related actions. Basith simply argues that Cook County's refusal to allow him to return to work, its refusal to accommodate his disability by allowing him to use a wheelchair or by restructuring his work assignment, and its refusal to allow him to work overtime in his special assignment, could be seen by a trier of fact as retaliation.

"The question whether a change in an employee's job or working conditions is materially adverse, rather than essentially neutral, is one of fact . . . and so can be resolved on summary judgment only if the question is not fairly contestable." Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 273-74 (7th Cir. 1996). We need not decide whether the alleged adverse employment actions cross this line, however, in light of Basith's clear failure to show a causal link between his speech and the retaliation he charges.

To prove the third element of his prima facie case, causation, Basith must show that Cook County would not have taken the adverse employment actions "but for" his protected expression. See McKenzie, 92 F.3d at 483. It does not appear from the record that Cook County's actions meet this standard. More importantly, Basith makes no attempt to show that Cook

County's employment actions would not have occurred but for his protected expression, and this is fatal to his claim.

In addition, even had Basith established a prima facie case, Cook County had provided legitimate non-retaliatory reasons for requiring Basith to take medical leave and for refusing to schedule him for overtime and holiday work. In particular, Basith could not perform the essential functions of his job, and there was no need to perform overtime or holiday work under his special assignment. Basith has provided no evidence that these reasons were pretextual. Thus, his retaliation claim must fail.

III.

We conclude that Basith's ADA claim must fail because he was not a "qualified individual with a disability" under the ADA, and, moreover, Cook County accommodated his disability. His Title VII retaliation claim also fails because he failed to show that Cook County's alleged adverse employment actions were caused by his protected speech, and because Cook County provided legitimate nondiscriminatory reasons for these actions. The district court is AFFIRMED.

FOOTNOTES

/1 A revised job description prepared in April 1991 included the following requirements for technicians:

1) Must be able to tolerate prolonged walking/standing.

2) Must be able to lift and carry objects weighing up to 60 pounds.

3) Must be able to push medication carts over prolonged distances and up ramps.

Hays testified, however, that the lifting requirement had been decreased to 20 pounds in the late 1980's.

/2 Whether a task requires a large or small portion of an employee's time could be evidence that it is or is not an essential function. See 29 C.F.R. sec. 1630(n)(3)(iii) (providing example of "[t]he amount of time spent on the job performing the function" as evidence that function is essential). It is but one factor, and in this case someone--if not the technician--would have to devote one hour to the essential function of delivering the piggybacks.

/3 The parties dispute whether Basith made one

request or repeatedly asked to be able to use a motorized wheelchair. Cook County, which contends Basith only asked once, claims that his request was rendered moot by the special assignment in the clean air room for purposes of determining whether Cook County provided a reasonable accommodation. We need not address this question to determine whether Basith was a "qualified individual with a disability."

/4 Basith had also filed a charge with the Illinois Department of Human Rights, which was subsequently withdrawn. That charge also addressed a different time period.