**Jill RICE, Plaintiff,**

**v.**

**INDIANA STATE POLICE, Melvin J. Carraway, in his Capacity as the Superintendent of Indiana State Police Dismissed 5/1/98 (Deft named in Amended Complaint Files on 8/6/98), FGST. Mark Mitchell, in his Personal Capacity and his Official Capacity as a Supervisor for Indiana State Police, Major Robert Holland, in his Personal Capacity and his Capacity as a Supervisor for Indiana State Police, Dale**

Zachary, in his Personal Capacity and his Official Capacity as a Supervisor for Indiana State Police, Sgt. Chuck Coffin, in his Personal Capacity and his Official Capacity as Supervisor for Indiana State Police, Defendants.

No. IP–98–201–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 12, 2001.

Kay Beehler, Indianapolis, IN, Thomas Dakich, Baldwin & Dakich, Indianapolis, IN, Stephen Laudig, Laudig & George, Indianapolis, IN, for plaintiff.

David L. Steiner, Deputy Atty. Gen., Indianapolis, IN, for defendants.

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction.*

This is a disparate treatment sex discrimination case. The plaintiff, Jill Rice, alleges that her employer, the Indiana State Police (hereafter "ISP"), and, specifically, the individually-named defendants, treated her less favorably than similarly-situated male employees in violation of Title VII, 42 U.S.C. §§ 2000e et seq., and her rights under the Equal Protection clause of the Fourteenth Amendment as made applicable by 42 U.S.C. § 1983. Ms. Rice, a sergeant with ISP, alleges that she was denied training and educational opportunities, denied favorable assignments, excluded from the chain of information, and, eventually, demoted, on the basis of her sex. She also implies that she was made the victim of retaliation for having complained to her superiors about the gender discrimination.

The case is before the Court on Defendants' Motion for Summary Judgment. Because Sgt. Rice has failed to provide legally sufficient evidence that she was the victim of discrimination or retaliation, defendants' motion must be GRANTED.

### II. *Statement of Facts.*

The following facts are either undisputed or interpreted in a light reasonably most favorable to the plaintiff.

Jill Rice served as a Master Trooper for the Indiana State Police. Plaintiff's Responses to Defendants' Statement of Material Facts (Hereafter "Pl. Response"), ¶ 1. In October 1995, she was promoted to Sergeant and assigned to the position of Intelligence Coordinator in the Criminal Intelligence Section. Defendants' Statement of Material Facts (hereafter "Def. SOMF") ¶ 1. Rice, a female, was one of

three Coordinators. The other two, both males, were: Sgt. Ken Houck, Coordinator of Vehicle Theft and Odometer Fraud Investigations; and Chris Hunt, Coordinator of Child Pornography Investigations. Def. SOMF, ¶¶ 3–6. Sgt. Rice reported to First Sergeant Larry Turner and later to First Sergeant Mark Mitchell, who, in turn, reported to Lt. Chuck Coffin, who had been Commander of the Criminal Intelligence Section since 1993. Coffin Aff. ¶ 5; Mitchell Aff., ¶ 7; Def. Facts, ¶¶ 17, 32.

When Sgt. Rice was promoted to Intelligence Coordinator, Lt. Coffin explained the duties of the position to her. Def. Facts ¶ 16; Pl. Response, ¶ 16. According to Lt. Coffin's testimony, he explained to Sgt. Rice that her primary task would be to gather intelligence as assigned. He told her that the Intelligence Coordinator position required flexibility and that it involved receiving and analyzing intelligence information from a wide variety of sources and agencies and then coordinating the effective use of that information. Lt. Coffin testified that he told Sgt. Rice she should not view the Intelligence Coordinator position primarily as a field position. Def. Facts, ¶ 18, 19. Although Sgt. Rice denies that Lt. Coffin made these statements, she offers no references to the record to support her denials. She asserts that Lt. Coffin never told her that the Intelligence Coordinator position required flexibility, but that he did tell her that it would involve 70% field intelligence work. Pl. Response, ¶¶ 18, 20; Rice Aff.

Sgt. Rice attended three outside training seminars in 1996 and 1997. Def. Facts, ¶ 26. Sgt. Rice acknowledges that she attended a FinCEN/GATEWAY training program in July 1997. Pl. Response, ¶ 27. ISP says that Lt. Coffin asked Sgt. Rice to undergo internal training on various outside programs. Def. SOMF ¶ 9–12. According to Lt. Coffin, Sgt. Rice did not take the requested in-house training (except for a brief INTERPOL training session) and she "resisted" the assignment. Def. SOMF ¶ 11–13. ISP states that, because Sgt. Rice resisted the earlier in-house training, she was not sent to outside training with respect to the MACLOGEN, EPIC, INTERPOL, FinCEN, and GATEWAY programs. Def. Facts ¶ 29. In her opposition brief, Sgt. Rice denies that she resisted the assignments. Indeed, she claims that she volunteered for hostage negotiation training but was turned down. Pl. Response ¶¶ 28, 29. ISP claims that it decided whom to assign to various training programs based on funding and on the particular training needs of each employee. Def. Facts, ¶ 31. Sgt. Rice asserts that only males—Houck and Hunt—were assigned such training, thus implying that the reason Sgt. Rice was denied the training was that she is a woman. Pl. Response, ¶ 30, 31; Rice Aff.

Prior to her assignment in the Criminal Investigations Section, Sgt. Rice had worked as an investigator in ISP's Major Drug Section. Most of her work in the Major Drug section had been field investigations, where "independent action was expected." Def. Facts ¶ 35. ISP claims that, after Sgt. Rice was reassigned to Criminal Investigations, she had difficulty adjusting to work that was more office oriented. Def. Facts, ¶ 36. Although Sgt. Rice denies this assertion, her supervisor, First Sgt. Mitchell, counseled her in September, October, and November 1996 about clearing out-of-office details with her commanders.

Additionally, Lt. Coffin explained at a staff meeting in October 1996 that all staff, and not just Sgt. Rice, were expected to concentrate on office assignments rather than field assignments. Def. Facts, ¶ 37. Sgt. Rice denies that she had any trouble

adjusting to the more sedentary nature of her job as a Coordinator. She also denies that she was counseled about clearing out-of-office details with her commander. Pl. Response, ¶ 37. However, ISP provides evidence to support its assertion, including a memorandum of January 31, 1996, in which Lt. Coffin detailed various problems with Sgt. Rice's performance, including her failure to clear out-of-office details with her commander and her need to focus more on in-office, rather than field, assignments. Lt Coffin concluded in that memorandum that Sgt. Rice did not comply with Division and Section policies. Similarly, a document dated February 18, 1997, purporting to be a Letter of Reprimand, indicates that Lt. Coffin counseled Sgt. Rice about repeatedly leaving her duty station without command approval. Coffin Aff., Ex. B. Much the same failure to report absences from duty station is noted in a memorandum of February 14, 1997. Def. Facts, ¶¶ 39, 40. The same conduct is noted in a memorandum of February 18. Def. Facts, ¶ 41. On February 5, 1997, Sgt. Rice also was reprimanded for accessing BMV information for her son, contrary to Department policy. Def. Facts, ¶ 42–43. Sgt. Rice does not dispute these latter assertions. Pl. Response, ¶¶ 41–43.

After a reorganization in 1997, ISP assigned supervisory responsibilities to the Vehicle Theft and Odometer Fraud Coordinator (occupied by Sgt. Houck) and the Child Pornography Coordinator (occupied by Hunt). No supervisory responsibilities were assigned to Sgt. Rice's position as Criminal Investigations Coordinator. ISP says that the Criminal Investigations Coordinator never had supervisory responsibilities. Def. Facts, ¶ 44, 45. Sgt. Rice disputes these assertions, saying that Child Pornography did not receive supervisory responsibilities, but that Sgt. Hunt was selected to attend supervisory training while she was not. Pl. Response ¶¶ 44, 45.

## III. *Analysis.*

### A. *Summary Judgment Standard.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir.1998). A "material" fact is a fact that is potentially outcome determinative. S.D.Ind.L.R. 56.1(h) ("For purposes of summary judgment, a material fact is a potentially outcome determinative fact."). *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir.1997); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 612–613 (7th Cir.2001) 610 (7th Cir.2001), *quoting Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 106 S.Ct. 2548. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact

to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249–52, 106 S.Ct. 2505.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable factfinder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Waldridge*, 24 F.3d at 920.

### B. *Local Rule 56.1.*

Before turning to the substance of Sgt. Rice's claim, we note that Local Rule 56 implements the mandate that the nonmoving party is required to state specific facts and to point to admissible evidence in the record to support her factual assertions. This requirement is not intended as an obstacle to trip the unwary. It is intended to "streamline the decision-making process for summary judgments by requiring the parties to identify disputed facts precisely, and to avoid the phenomenon of having the parties' papers seem like ships passing one

another unseen in the night." *Elghanmi v. Franklin College of Indiana, Inc.*, 2000 WL 1707934, *2 (S.D.Ind.2000), *citing Pike v. Caldera*, 188 F.R.D. 519, 521 (S.D.Ind. 1999). Statements of fact should provide a "roadmap," guiding the decision making process. *Waldridge*, 24 F.3d at 923.

Accordingly, the Seventh Circuit has repeatedly admonished parties opposing summary judgment that they must comply with local summary judgment rules which require them to point to admissible evidence in the record. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.1999). It is not the Court's job to scour the record to find evidence to support a party's assertions. *Richards v. Combined Insurance Company of America*, 55 F.3d 247, 251 (7th Cir.1995); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir.1997). As the Seventh Circuit succinctly observed: "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991), *per curiam*, vacated on other grounds, 498 U.S. 1043, 111 S.Ct. 747, 112 L.Ed.2d 768 (1991).

Finally, the evidence a party cites in opposing a motion for summary judgment must be *admissible* evidence. *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927–928 (7th Cir.1998). One condition precedent of admissibility is authentication. Fed.R.Evid. 901(a). *Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 852–853 (7th Cir.1998).

■ Rice has not complied with any of these requirements. Most of her opposition to summary judgment consists in denying defendants' statements of material fact without reference to any evidence to support the denials. The evidence she does present consists of her own affidavit in unnumbered, narrative form, and a set

of unauthenticated exhibits.[1] It is true that a plaintiff's affidavit is admissible evidence that may refute the factual basis of a motion for summary judgment. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994). But Rice's affidavit is essentially a repetition of her complaint allegations in narrative form. In other words, Rice's affidavit avoids the letter of Rule 56's admonition that the non-moving party may not rest on her pleadings only by restating her pleadings in the form of an affidavit. This is the kind of "self-serving affidavit[ ], unsupported by the record", [that] will not preclude summary judgment. *Basith v. Cook County*, 241 F.3d 919, 2001 WL 220070, *5 (7th Cir.2001). *See Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir.1997). Such affidavits do nothing to advance the non-movant's case. *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir.1998).

In sum, plaintiff has not complied with Local Rule 56 by presenting admissible evidence to support her claims. Such failure has frequently led to affirmance of an award of summary judgment by the Court of Appeals, which has repeatedly "endorsed the exacting obligation[s]" created by local rules governing summary judgment practice. *Waldridge*, 24 F.3d at 921–922 (7th Cir.1994). *See Corder*, 162 F.3d at 927–928. Because the record here is thin and uncomplicated, however, we will consider Rice's arguments on the merits, based on her evidence such as it is, at the risk of encouraging future noncompliance, or not discouraging future noncompliance strenuously enough.[2]

## C. *Rice's Title VII and Section 1983 Claims.*

Sgt. Rice alleges two causes of action against multiple defendants. She alleges, first, that ISP and the individually-named defendants violated the Equal Protection clause of the Fourteenth Amendment by discriminating against her on the basis of her gender and that they denied her due process of law; and, second, that ISP and the individually-named defendants discriminated against her on the basis of her gender in violation of Title VII. According the facts and the evidence the most charitable reading, the case readily resolves itself into a single cause of action for sex discrimination[3] under Title VII

---

1. Plaintiff refers to these exhibits throughout her statements of fact as "Def. Exh.," raising an inference that defendants offered them. However, since defendants objected to these exhibits on the ground that they are not authenticated, the Court concludes that the exhibits are not "**Def. Exhs.**" at all but are really "**Pl. Exhs**" in the sense that plaintiff is offering them. Meanwhile, Defendants could have clarified this matter in their Reply brief where they objected because the documents lacked authentication, but did not mention the erroneous attribution of the documents.

2. In order to do so, we will assume that, through proper authentication procedures pursuant to Fed.R.Evid. 901, Rice would be able to show that all or portions of Exhibits A, C, D, E, F, G, K, M, N, O, R, S, and T are business records and thus would be admissible under Fed.R. Evid. 803(6) and that Rice

herself would testify to the statements she makes in Exhibits B, H, I, J, and L.

3. Although Sgt. Rice uses the phrase "due process," she nowhere addresses any due process issue. Accordingly, she has waived that issue. *Teumer v. General Motors Corp.*, 34 F.3d 542, 545–46 (7th Cir.1994) (plaintiff waived legal theory when he "fail[ed] ... to present legal arguments linking the claim described in the complaint to the relevant statutory (or other) sources for relief"); *Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir.1990) (plaintiff's failure to brief legal theories supporting his claim in response to motion to dismiss constituted waiver). Similarly, although Sgt. Rice appears to allege that she was demoted on the basis of her gender and that she was the victim of retaliation because she complained about her demotion, she expressly admits defendants' factual statement

and section 1983 and against a single defendant, ISP.[4] At bottom, Sgt. Rice claims that ISP treated her less favorably than similarly-situated male employees with respect to employment opportunities. Specifically, she claims that ISP treated her less favorably than Houck and Hunt by not assigning her to field investigations, not training her as well, not keeping her in the chain of information, and not assigning supervisory responsibilities to her.

In employment discrimination cases under both Title VII and section 1983, disparate treatment analysis follows the same general contours. *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 567, n. 6 (7th Cir.2000). Under

well-established methods of proof, Rice may prove her sex discrimination claim by presenting either direct or indirect evidence of discrimination. Where, as here, she makes no claim to direct evidence,[5] she may use the indirect method by establishing a prima facie case of discrimination, shifting the burden of production to the defendant to present evidence of a legitimate nondiscriminatory reason for taking its adverse employment actions, and then by demonstrating that defendant's articulated explanation for its adverse employment actions is a pretext for discrimination. If Sgt. Rice makes out a prima facie case, she creates a rebuttable presumption of discrimination. *Janiuk v. TCG/Trump Co.*, 157 F.3d 504, 507 (7th Cir.1998);

---

that she was not demoted at all. Def. Facts, ¶ 57; Pl. Response, ¶ 57. Accordingly, to the extent that Sgt. Rice seeks to allege discriminatory demotion, that claim is dismissed. And, since the only retaliation she hints at is the demotion, her retaliation allegation is dismissed as well.

4. Sgt. Rice names five individual defendants, Superintendent Melvin Carroway, First Sergeant Mark Mitchell, Major Robert Holland, Capt. Dale Zachary, and Sgt. Chuck Coffin in their "official" and "individual" capacities. All must be dismissed in their "official" capacities because, as noted in the Court's August 5, 1998 Entry, official capacity actions are redundant where, as here, the entity for which the individuals worked itself is named. The conduct of the named ISP employees in their official capacities is the conduct of ISP, and the Eleventh Amendment simply does not allow damages suits against states, state agencies, or state employees acting in their official capacities. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir.2000); *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir.1997).

All of the named individuals must be dismissed in their "individual" capacities as well. First, Title VII does not recognize actions against individual supervisors. *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998); *Geier v. Medtronic, Inc.*,

99 F.3d 238, 244 (7th Cir.1996); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995). Second, section 1983 requires individualized proof that that the named official was directly responsible for the improper conduct, *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), and "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). See *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, (7th Cir.2000). Sgt. Rice has made no allegation, much less a showing, that any of the named individuals meet the criteria for individual liability pursuant to section 1983.

5. The Seventh Circuit defines direct evidence as evidence, which "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Cowan v. Glenbrook Security Services, Inc.*, 123 F.3d 438, 443 (7th Cir.1997) or "evidence which can be interpreted as an acknowledgment of the defendant's discriminatory intent...." *Kormoczy v. HUD*, 53 F.3d 821, 824 (7th Cir.1995), *quoting Wichmann v. Board of Trustees of Southern Illinois University*, 180 F.3d 791 (7th Cir.1999), *cert. granted and judgment vacated on other grounds by Board of Trustees v. Wichmann*, 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807 (2000); *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, (7th Cir.1996).

*Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir.1998).

■ The burden of establishing a prima facie case is not onerous; according to the Supreme Court, it is "quite easy to meet." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Kahn v. U.S. Secretary of Labor*, 64 F.3d 271, 277–278 (7th Cir., 1995); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1113 (7th Cir.1992). The parties do not dispute that Sgt. Rice is a member of a protected class, was performing her job satisfactorily (she was never subject to demotion or discharge), suffered from adverse employment actions (although after she acknowledged that she was not demoted, evidence with respect to this prong is dubious),[6] and similarly-situated male employees were treated more favorably. Her affidavit sets forth a narrative of events which, if believed and not answered, would be enough to raise an inference that ISP may have harbored a discriminatory motive. Similarly, the documents she offers (making the allowances already noted as to admissibility) tend to show that she was a satisfactory performer and that she was not approved for two training programs. This is all she need do to establish a prima facie case, and, therefore, a rebuttable presumption of discrimination. *Kahn*, 64 F.3d at 277; *Bell v. Environmental Protection Agency*, 232 F.3d 546, 550 (7th Cir.2000). *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir.1999); *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 377–78 (7th Cir. 1995).

■ ISP, in turn, has offered legitimate, nondiscriminatory reasons for its employment decisions. It presents evidence showing that it made training and work assignments based on the needs of each section and distributed supervisory responsibilities according to the requirements of each section and according to the experience and expertise of the individual Coordinators. As to being excluded from the chain of information, ISP acknowledges that some intelligence reports inadvertently bypassed Sgt. Rice, but that once the omission was discovered it was remedied. Sgt. Rice admits that the omission was corrected. Pl. Response, ¶ 47.

■ The burden thus falls on Sgt. Rice to present admissible evidence on the ultimate issue: that ISP's explanation of its employment decisions is pretextual. A "pretext" is not merely a mistake or an imprudent reason; it is a false reason or a dishonest explanation, which, because of its falseness or dishonesty, raises a question as to whether the employer is hiding a discriminatory motive. In other words, Sgt. Rice must present admissible evidence showing that ISP did not honestly believe the reason(s) it offers for its decisions or had no basis for making them. *Bell v. EPA*, 232 F.3d at 550; *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997).

Here, there is no hint of such a false reason or dishonest explanation. All Sgt. Rice offers is her belief that the decisions must have been motivated by her gender because she is a woman and Houck and Hunt are men.[7] Sgt. Rice's logic goes like

---

**6.** ISP does not challenge Sgt. Rice's implicit claim that the conduct of which she complains amounted to "adverse employment actions." *But see Oest v. Illinois Department of Corrections*, 240 F.3d 605, 612–613 (7th Cir. 2001); *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1112 n. 7 (7th Cir.1998); *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993).

**7.** In her Response to defendants' statement of material facts, Sgt. Rice states, for example: "Sgt Rice was absolutely excluded from KKK and Militia details due to her gender." Pl.

this: I am a woman; I was treated less favorably than similarly-situated men; therefore, I was treated less favorably *because* I am a woman. In addition to presenting no evidence to support the premises of this syllogism, however, Sgt. Rice's belief confuses correlation with causation.[8]

Even if we assume for purposes of summary judgment that Lt. Coffin told her that the Criminal Investigation Coordinator position was likely to involve 70% field work, even if we assume that she volunteered for certain educational opportunities but was turned down, and even if we assume that her position was not accorded supervisory responsibilities whereas the other two Coordinator positions were, she presents no evidence that the explanation for these employment decisions was her gender and not the legitimate reasons that ISP offers. In other words, Sgt. Rice gives us no factual basis, supported by admissible evidence, to raise an inference in her favor. Sgt. Rice needs more than her belief and more than a correlation between her gender and the adverse employment actions she allegedly suffered to raise a reasonable inference that she was the victim of sex discrimination. To paraphrase the Seventh Circuit: ISP "is allowed to determine the job responsibilities of its [Criminal Investigation Coordinators], and it is not this court's duty to second-guess that judgment so long as the employer's reasons are not pretextual." *Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir.2001).

Sgt. Rice has not presented legally sufficient evidence to raise an inference that

ISP discriminated against her on the basis of her sex. Accordingly, defendants' Motion for Summary Judgment is GRANTED and Sgt. Rice's complaint is dismissed pursuant to Fed.R.Civ.P. 56.

It is so ORDERED this —— day of May 2001.

---

Response, ¶ 49. And, for example: "Denied. Sgt. Rice believes that she was relegated to an office and a desk, with no access to even the minimal reports of the intelligence section, because she is a female ." Pl. Response, ¶ 53.

8. Sgt. Rice states: "Denied. Sgt. Rice was the ONLY Coordinator who was female, and who was not given supervisory responsibili-

ties upon reorganization." Pl. Response, ¶ 46. In addition to illustrating the confusion between correlation and causation, the statement is inconsistent with her statement that "[the] Child Pornography [Coordinator] never received any responsibilities for supervision." Pl. Response, ¶ 44.