MANION, Circuit Judge,
concurring.
I agree with the court that a question of fact exists concerning whether transporting residents to and from the beauty parlor is an essential job function for hairdressers working for Mason Point. Thus, I concur in the court’s decision reversing the district court’s grant of summary judgment to Mason Point and remanding the case for trial. I write separately, however, to stress that in determining whether a task constitutes an essential job function, the percentage of time spent on the task and the cost to the employer if the task is reassigned are not necessarily deciding factors. Further, an employer need not reassign an essential job function to another employee, although it must, of course, provide reasonable accommodations to allow a qualified individual with a disability to perform essential functions.
£
Under the ADA, an employer cannot discriminate against “a qualified individual on the basis of disability.” 42 U.S.C. § 12112(a). To be a qualified individual with a disability within the meaning of the ADA, in addition to being disabled (as statutorily defined, and not at issue in this case) the individual must be able “with or without reasonable accommodations, [to] perform the essential functions of the employment position.... ” 42 U.S.C. § 12111(8). At issue in this case is whether transporting wheelchair-bound residents to and from the hair salon at Mason Point is an essential function of the hairdresser position.
In determining whether a task is an essential job function, “a court may ^consider, but is not limited to, evidence of the employer’s judgment of a position, written job descriptions prepared before advertising or interviewing applicants for the job, the work experience of past incumbents of the job, and the work experience of current incumbents in similar jobs.” Basith v. Cook County, 241 F.3d 919, 927 (7th Cir.2001) (citing 29 C.F.R. § 1630.2(n)(3)). “The amount of time spent on the job performing the function” is also a factor used to determine whether a task is an essential function. Id. at 929 n. 2 (quoting 29 C.F.R. § 1630.2(n)(3)(iii)).
In this case, there is a great disparity in the estimates concerning the amount of time Kauffman spent wheeling residents to and from the beauty salon. The court stresses this disparity, as well as the theoretical percentage of time another staff member would need to spend on that task. But the amount of tipie spent on a task is but one factor considered in determining *965 whether a task is an essential job function. It is not dispositive because “an essential function need not encompass the majority of an employee’s time, or even a significant quantity of time, to be essential.” Basith, 241 F.3d at 929. Thus, even if Kauffman spent only 1.71 hours pushing wheelchairs, that task could nonetheless be an essential job function. Id. (holding that delivery of prescription medications was an essential function of a Pharmacy Technician II position, even though it took up “only 45 minutes to an hour of an 8-hour day”).
The court hypothesizes that an orderly could easily take over the task and focuses on the potentially low cost of reassigning the transporting task to an orderly (or another staff member). But “[a]n employer need not reallocate the essential functions of a job, which a qualified individual must perform.” Basith, 241 F.3d at 929 (quoting Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112-13 (8th Cir.1995)). Further, “[t]he fact that restructuring is feasible, in itself, is not persuasive evidence one way or the other that a function is essential to a job.” Basith, 241 F.3d at 930.
Moreover, it may well be that Mason Point views the time the hairdresser spends with the resident during the trip to and from the beauty salon as even more essential than the physical conveyance of the patient from point A (her room) to point B (the salon). The weekly trip to the beauty salon might be a highlight for some of the wheelchair-bound residents, providing them an opportunity to visit with the hairdresser as well as to speak with others likewise limited in mobility. As Kauffman explained at her deposition, she was often stopped by other residents to chat and also at times pulled aside at the medical center so the staff could weigh the resident.
No doubt over time Kauffman became well acquainted with the residents that she serviced. A resident’s mental capacity and physical needs will vary. Knowledge acquired by Kauffman over the years about such things as relatives, medical conditions, treating physicians, and other interests promotes conversations that are meaningful to the resident. Encouraging this type of relationship not only benefits the resident, but also could be a source of information for Mason Point. If a resident experiences some mistreatment or neglect, or if a resident has a personal problem that she would like to quietly share, discussions during the trip to and from the salon become an important part of the quality treatment and service Mason Point would encourage. After all, Kauffman had worked there for twenty years, and surely she often developed this kind of friendship. That quality service may be essential because it benefitted the resident and Mason Point.
An orderly could obviously transport the residence just as easily, but in addition to all of the other personal benefits mentioned, Mason Point could also reasonably conclude that it made more sense for the hairdresser to transport the resident because then any delays in the transport would not affect anyone else: There would not be another resident waiting to be picked up at the hair salon, or a hairdresser waiting for the next resident to arrive. That, in essence, is what Mason Point argues:
It does not enhance the quality of life for these Residents to be seated in a wheelchair (which may or may not be a comfortable position) and lined up at Mason Point’s salon. It is better for' the Resident to be brought down-only when ready to be served and the beautician is the only person capable of determining when she is ready to help the next Resident.
*966 An employer is free to determine job responsibilities of its employees, and “it is not this court’s duty to second-guess that judgment so long as the employer’s reasons are not pretextual.” Id. at 929.
I also have concerns with the court’s focus on Mason Point’s temporary reassignment of the transportation function to others while it was short a hairdresser. At most this shows that reassignment was feasible. More significant, though, is the fact that when a new hairdresser was hired, the hairdressers resumed the transport function. Among other things, courts should consider how, in practice, past and present employees perform the job. Kauffman, her replacement, and the other hairdresser (Nancy Burich) were all responsible for transporting residents to and from their appointments.
On remand, the trier of fact will need to evaluate the totality of facts to determine whether transporting residents was an essential job function. But even if it is an essential function, Kauffman may be able to show on remand that a reasonable accommodation would allow her to transport residents to and from the salon. The court illustrates as an accommodation lowering the level of a bathroom sink to allow an amputee to perform the essential functions of a job. The court, though, indicates that reassigning the transporting function is an equivalent accommodation. However, as noted above, an employer need not reassign an essential job function. See supra at 964-65. Perhaps more analogous to the sink situation, though, is the possibility of providing a battery-operated attendant-controlled wheelchair which would allow someone with Kauffman’s condition to safely operate it and traverse the short trip each way without any extra exertion that would violate the physician’s limitations. Of course this might be an added expense. But it would meet Mason Point’s goal in rendering high-quality service to the resident and allow Kauffman to continue those important relationships that she has developed over the years. A random pushing assignment from the orderly pool would be a poor substitute for the resident’s special relationship with the hairdresser. Accordingly, if transporting residents is an essential job function, the court on remand will then also need to consider whether such an accommodation is reasonable.
I concur.