In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3134

JEANNE GRATZL,

*Plaintiff-Appellant*,

*v.*

OFFICE OF THE CHIEF JUDGES OF THE
12TH, 18TH, 19TH AND 22ND JUDICIAL CIRCUITS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 867—**Amy J. St. Eve**, *Judge.*

ARGUED NOVEMBER 5, 2009—DECIDED APRIL 7, 2010

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Jeanne Gratzl suffers from incontinence and must get to a restroom within minutes of feeling an urge to urinate. She was hired by the Office of Chief Judges of the 12th, 18th, 19th and 22nd Judicial Circuits to work as a electronic court reporter specialist working exclusively in the control room of the DuPage County, Illinois courthouse. The job was ideal for her. Her

responsibilities were so compatible with her medical condition that her supervisors were not even aware of it for five years. Unfortunately for Gratzl, this ideal situation changed in 2006 when, in response to a directive from the Illinois Coordinator of Court Reporting Services, the Chief Judge eliminated her specialist position and required all court reporters to rotate through live courtrooms as well as the control room. Believing that she was unable to perform in-court reporting due to her incontinence, Gratzl requested an accommodation. After several months, discussions broke down and, when she would not return to work, her employment was terminated. Gratzl brought this suit against her employer under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* The district court granted summary judgment to the defendant. We affirm.

I.

Gratzl has suffered from incontinence since approximately 1991, apparently as a result of pregnancy complications. Unable to treat her condition with medication, she left a court reporting job and began to teach court reporting at McCormick College, which allowed her to manage her incontinence by leaving the room whenever necessary. When the campus where she was teaching closed in 2001, Gratzl transferred but soon had to quit because she was unable to make the commute to the college's Chicago campus without becoming incontinent. As her incontinence worsened, she applied for an elec-

tronic court reporting position in the control room at the DuPage County courthouse, believing the position would allow her to manage her condition. She was hired for the control room position and eventually entered into a written agreement specifying that her job responsibilities included only control room reporting. This arrangement worked favorably for both Gratzl and the court. Gratzl was able to manage her incontinence problem so well that no one was even aware of it. Then-Chief Judge Robert Kilander was pleased because court reporters, as a group, apparently preferred in-court reporting to the control room because they could make extra money preparing transcripts.

In 2006, however, the State of Illinois eliminated the "Court Reporting Specialist" job title and consolidated all reporters under the title "Official Court Reporter." Although the State did not specify what job responsibilities accompanied the new title, Judge Ann Jorgenson, the new Chief Judge of the DuPage County courthouse, decided that all court reporters—who now shared the same title—would be required to do the same job. This would include a full rotation in which all court reporters would rotate through all of the courtrooms, including the control room. According to the court, the purpose of this new procedure was to evenly distribute the workload that varied with each courtroom. When Judge Jorgenson told Gratzl on March 22 that she would have to go into the full rotation, Gratzl explained her medical condition to Judge Jorgenson and that, because of her condition, she believed she could not do in-court reporting. At the same meeting, Gratzl requested a leave of absence

for surgery scheduled on April 11, which Judge Jorgenson approved.[1] Judge Jorgenson then gave Gratzl until April 14 to decide whether to participate in the full rotation or resign. On April 10, Gratzl informed the court that she would participate in the full rotation. She then requested, and was granted, an extension of her medical leave until May 25.

On May 19, Gratzl's attorney formally requested that the court accommodate Gratzl's incontinence by allowing her to return to work full time in the control room. Her request was supported by a letter from Dr. Catrambone, in which he stated that Gratzl needed to have the access to a restroom on a moment's notice and opined that this requirement was inconsistent with in-court reporting duties. In response, the court first offered to assign Gratzl only to juvenile courtrooms, which did not have jury trials. With Dr. Catrambone's support, Gratzl rejected that offer as incompatible with her incontinence—jury or no, she would still not have the flexibility she needed during trials—and stated that she did not believe that any accommodation other than maintaining her prior specialist position would accommodate her needs. The court then offered to structure her rotation to include only the courtrooms with an adjacent restroom, but Gratzl rejected this proposal as well. Through further communication with Gratzl and Dr. Catrambone, the court

---

[1] The purpose of the surgery was to remove a cystocele, and not to correct the incontinence, although the surgery can help with incontinence.

learned that Gratzl needed to be able to access a rest-room within five minutes of feeling the urge to urinate, to prevent potential injury and the possibility of incontinent episodes.

Gratzl reiterated her request to be placed exclusively in the control room. In response, the court proposed additional accommodations, including: allowing her to avoid assignment to any courtrooms in which a trial was scheduled; not assigning her to juvenile courtrooms, which were farther from the restrooms; and establishing a "high sign" that she could use to signal to the presiding judge that she needed a break. Gratzl did not present these new terms to Dr. Catrambone but, feeling that the proposals did not accommodate her condition any better than the previous offers, rejected the offer. The court responded by reiterating that the job duties of all court reporters included rotating through both the courtrooms and the control room, repeating its latest offer of accommodation, and stating that Gratzl was expected to return to work on October 2. When Gratzl again rejected the offer, the court gave her until October 27 to provide specific reasons why the offer remained incompatible with her condition. She responded that because her medical condition had not changed, further back-and-forth debate over the previously rejected offer served no purpose. On October 31, the court terminated Gratzl's employment.

Gratzl then sued the Office of the Chief Judges under the ADA and the Rehabilitation Act for failing to accommodate her incontinence. The defendant moved for sum-

mary judgment, arguing that Gratzl had not established that she was disabled under the ADA and Rehabilitation Act, that it had offered her a reasonable accommodation, and that she was not qualified for the job of Official Court Reporter if she could not do in-court reporting. The district court concluded that Gratzl had not established that she was disabled under the ADA and Rehabilitation Act and granted summary judgment on that ground. It did not address the defendant's other arguments. Gratzl appeals.

II.

Gratzl argues that the district court erred when it concluded that she had not established that she was a qualified individual with a disability under the ADA and Rehabilitation Act.[2] We review the district court's grant of summary judgment de novo, viewing all facts in the light most favorable to and drawing all reasonable inferences for Gratzl, the nonmoving party. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). To establish her failure to accommodate claim under the ADA, Gratzl must show that: (1) she is a "qualified individual with a disability"; (2) the defendant was aware of her disability; and (3) the defendant failed to reasonably accom-

---

[2] The standards are the same under the ADA and the Rehabilitation Act. *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001). Thus the analysis here, although expressed in terms of the ADA, is equally applicable to Gratzl's claim under the Rehabilitation Act.

modate her disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). "We may affirm a summary judgment on any ground that finds support in the record where the ground has been adequately presented in the trial court so that the non-moving party had an opportunity to submit affidavits or other evidence and contest the issue." *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008) (internal quotations and citations omitted). Summary judgment is appropriate in this case only if there are no genuine issues of material fact and the defendant, the moving party, was entitled to judgment as a matter of law. *Id.*

The first step in determining whether a plaintiff is a "qualified individual with a disability" is to determine whether the plaintiff has a disability, or more specifically, whether she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(1)(A). In this case, the district court concluded that Gratzl had not established that she had a disability because she had not put forward any evidence that she was substantially limited in a major life activity. The activity Graztl cites—elimination of waste—was not explicitly listed in the ADA or its implementing regulations as a major life activity at the time Graztl requested an accommodation. *See* 29 C.F.R. § 1630.2(i) (2006). This court has never held that the elimination of waste was a substantial life activity under the ADA prior to the ADA Amendments of 2008,

which were not effective until January 1, 2009,[3] but we have held that similar bodily functions, including eating, are major life activities. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001). And other circuits have held that the elimination of waste is either itself a major life activity or essential to other major life activities such as caring for one's self. *See, e.g.*, *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 255 (4th Cir. 2006) (holding that the elimination of bodily waste is a major life activity under the ADA); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) (holding that controlling one's own bowels can be a major life activity). We need not, however, resolve this question of interpretation of a superseded law because, even if she has a disability, Gratzl is not entitled to relief under the ADA for other reasons: she is not a qualified individual and she rejected the reasonable accommodation that the court offered.

To establish that she is a "qualified individual with a disability," Gratzl must establish not only that she has a disability within the meaning of the ADA, but also that she is qualified for the job, i.e., that she is able "to perform the essential functions of the job, with or without rea-

---

[3] Gratzl argues that the amendments, which expressly provide that the elimination of waste is a major life activity, should apply retroactively. But this court has assumed that the amendments are not retroactive, *Fredricksen v. United Parcel Service, Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009); *Winsley v. Cook County*, 563 F.3d 598, 600 n.1 (7th Cir. 2009), and we see no reason to question that assumption here.

sonable accommodation." 42 U.S.C. § 12111(8); *Jackson v. City of Chicago*, 414 F.3d 806, 811 (7th Cir. 2005).

Therefore, the key question in this case is whether rotating through courtrooms was an essential function of Gratzl's court reporter job. The factors we consider to determine whether a particular duty is an essential function include "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the duty, and past and current work experiences." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004) (internal quotations and citations omitted); *accord Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(3)); *see also* 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description . . . , [it] shall be considered evidence of the essential functions of the job."). We presume that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary. *Baisth*, 241 F.3d at 928. Further, an employer may specify, for legitimate reasons, multiple essential duties for a position, and when an employee is expected to rotate through duties, he "will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." *Id.* at 929.

Gratzl argues that in-court reporting is not a necessary qualification for the job, but it is indisputable that with the 2006 elimination of specialist positions, in-court reporting became a necessary function. When Gratzl was

hired, she was hired specifically for the position of control room specialist. Judge Jorgenson, interpreting a policy change that came from above, effectively eliminated the control-room specialist as a separate position and required all court reporters to rotate through all court-rooms, including the control room. Thus the job for which Gratzl needs to be qualified is that of an "Official Court Reporter" in the DuPage County courthouse, not the specialist position for which she was hired in 2001. It is plain that the defendant considered in-court reporting an essential function of the "Official Court Reporter" job. The only evidence to the contrary that Gratzl cites is her prior assignment to the control room on an exclusive basis. But this is circular: Gratzl cannot prove that she is qualified for her current job simply by citing evidence that she was qualified for a previous job, with different essential functions, that has been eliminated. Graztl is unable to sit in the courtroom during proceedings without disrupting court; she has offered no evidence to the contrary and, in fact, her refusal to consider any accommodation that required that she do in-court reporting strongly suggests that she believed she was incapable of performing this function. Therefore, she is not qualified for the job.

Another way to look at the question is whether the only accommodation that Gratzl requested—exclusive assignment to the control room—was a reasonable accommodation. Because Gratzl bears the burden of establishing that she can perform the essential functions of her job "with or without reasonable accommodation," *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001), she has

not met this burden if the only accommodation she has ever suggested is not reasonable. But, as Gratzl herself put it succinctly in her June 8th letter to Chief Judge Jorgenson: "If we believed that another accommodation, other than maintaining Ms. Gratzl's position, could successfully accommodate her disability, we would suggest it." Gratzl has not suggested any such other accommodation to Judge Jorgenson, to the district court, or on appeal.

An employer need not create a new job or strip a current job of its principal duties to accommodate a disabled employee. *Ammons*, 368 F.3d at 819; *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996). Nor is there any duty to reassign an employee to a permanent light duty position. *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). Yet the job for which Gratzl was originally hired was a specialist position that did not require her to do court reporting in a live courtroom. It is undisputed that the court—with no knowledge of Gratzl's disability—decided that it did not wish to maintain specialist positions. Instead, all court reporters would be assigned to rotate through the courtrooms. In other words, the court eliminated the position for which Gratzl was originally hired by incorporating it as one among many court reporter duties in the rotation through all of the courtrooms. Even Gratzl appears to recognize this when she argues that the job responsibilities she was explicitly guaranteed when she was hired were those of a specialist and that the new responsibilities in the job description were contrary to what she was told when she was hired. Just as an employer is not required to

create a new position or strip a current job of its essential functions, an employer is not required to maintain an existing position or structure that, for legitimate reasons, it no longer believes is appropriate.[4]

Gratzl also argues that allowing her to resume her previous duties as a control room specialist was a reasonable accommodation because she and others have been assigned exclusively to the control room in the past and other courthouses operating under the same State guidelines, such as Cook County, allow "Official Court Reporters" to function as control room specialists. This amounts to an argument that because the court has divided up job responsibilities differently in the past, and because other courts operating under the same guidelines assign job responsibilities differently, it would be possible for the court to restructure its job responsibilities that same way. But "the fact that restructuring is feasible, in itself, is not persuasive evidence one way or the other that a function is essential to a job." *Basith*, 241 F.3d at 930. And although other court reporters

---

[4] Gratzl argues that reassigning her to the control room specialist position would not create undue hardship and therefore should be considered reasonable. This is wrong. It is true that undue hardship is a factor in deciding whether an employer is reasonably required to reassign a disabled employee. But this consideration is only relevant if there is a vacant position available for the employee. *Gile*, 95 F.3d at 499. An employer is simply not required to create (or recreate) a new position to accommodate an employee under the ADA, regardless of the amount of hardship involved. *Id.*

have been allowed to work in the control room exclusively on a temporary basis during pregnancy or to recover from injury or operation, the temporary reassignments to work exclusively in the control room during pregnancy or recovery that Gratzl cites were made before the decision to formally eliminate the specialist position. Further, even if the court continued the practice of temporarily reassigning court reporters to the control room, we have already noted that this would not create an obligation that it accommodate Gratzl with a permanent control-room position. *See Watson*, 304 F.3d at 751 (rotation allows employer to have qualified people to fill in for absences, sicknesses, or vacations); *see also Winfrey*, 259 F.3d at 616 (holding that an employer may not be punished for going beyond obligations of ADA by being "deemed to have conceded the reasonableness of so far-reaching an accommodation" (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 (7th Cir. 2001))); *Basith*, 241 F.3d at 930 (refusing to punish employer for going beyond the requirements of the ADA by requiring the employer to maintain more unnecessary accommodation).

To be entitled to a reasonable accommodation—and thus to prove that the defendant failed to provide such a reasonable accommodation—Gratzl has the burden of establishing that she is a "qualified individual with a disability" under the ADA. Yet she has presented no evidence that she can perform the essential functions of an Official Court Reporter in the DuPage County courthouse—including in-court reporting—with or without reasonable accommodation. The only accommodation she has suggested or indicated she would accept is, as a

matter of law, not a reasonable accommodation and therefore not required by the ADA.

At this point, we have concluded that summary judgment is appropriate because no reasonable jury could conclude that Gratzl was qualified to perform as a court reporter in the rotation required by the DuPage County Court. But even if we were to assume, *arguendo*, that whether she was a qualified individual with a disability was a disputed question of fact, it was still up to the court officials—not Gratzl—to construct the accommodation. "An employer is not obligated to provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 546 (7th Cir. 2008); *Gile*, 95 F.3d at 499. The courthouse fulfilled its obligation when it offered to assign Gratzl only to the five courtrooms closest to restrooms, avoid assigning her to in-court reporting in jury trials, and establish a "high-sign" to signal to the judge when she needed a short break.

Gratzl argues that this accommodation did not accommodate her disability for three reasons. First, she argues that it did not account for the fact that delaying urinating could damage her physically. But the accommodation was structured precisely to conform to her physician's opinion that she needed to be able to reach a bathroom within five minutes of feeling the urge to urinate, and she has not explained why it would not. Second, she argues that the accommodation was not compatible with her condition because of the disruption it would cause:

proceedings could be disrupted by her need for frequent and immediate breaks; court calls would go longer because of the extra breaks; and court reporters would need to be reassigned to cover for her if a trial began. But these concerns are only relevant to whether the court officials were required to offer the burdensome accommodation they did, and nothing prevents an employer from doing more than what is required of it by the ADA. *Cf. Basith*, 241 F.3d at 930 (refusing to punish an employer for going beyond the requirements of the ADA). That the court was willing to offer what even Gratzl describes as a burdensome solution is evidence of the court's commitment to courtroom rotation as an essential function of each court reporter as well as an indication of its commitment to finding a solution that worked for both sides. Finally, Gratzl argues that because the accommodation would require her to publicly request breaks in open court, the resulting disruption would cause her embarrassment about her condition and to feel that the judges and other court reporters resented her. It is understandable why Gratzl refused to accept these accommodations for personal reasons. But it was she, not the court, who resisted the effort to accommodate. Her prior position served her well for several years. That position no longer exists.

The ADA requires an employer to "mak[e] reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A). The proposed accommodations here satisfied that requirement, and for personal reasons, Gratzl rejected them. By rejecting the proposed accommo-

dations, she was responsible for terminating the interactive process and hence not entitled to relief under the ADA. *Gile*, 95 F.3d at 499 ("[W]hen an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation, which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position.")

## III.

For the foregoing reasons, Gratzl has not established that she was a "qualified individual with a disability" under the ADA. And even if she was qualified for the modified court reporter position, Gratzl is still not entitled to relief under the ADA because she rejected the court's proposed accommodation. Therefore, we AFFIRM the judgment of the district court.