In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2893

RENEE S. MAJORS,

*Plaintiff-Appellant,*

*v.*

GENERAL ELECTRIC COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 10-C-1731—**Larry J. McKinney**, *Judge.*

ARGUED JANUARY 14, 2013—DECIDED APRIL 16, 2013

Before EASTERBROOK, *Chief Judge*, HAMILTON, *Circuit Judge*, and MILLER, *District Judge*.[*]

MILLER, *District Judge*.   Renee S. Majors, a long-time employee at General Electric Company's Bloomington, Indiana plant, filed suit alleging that GE violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*,

[*] The Honorable Robert L. Miller, Jr. of the Northern District of Indiana, sitting by designation.

and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it denied her temporary and permanent positions to which she was otherwise entitled under the seniority-based bidding procedure the plant used to fill vacant positions. Ms. Majors also alleged that GE retaliated against her, in violation of Title VII, for filing Equal Employment Opportunity Commission charges of discrimination when she was denied overtime hours and the opportunity to work "lack of work" Fridays, and that GE constructively discharged her when she elected to retire. The district court granted GE summary judgment on all claims. Ms. Majors appeals that decision with the exception of her Title VII discrimination claim. We affirm.

## I. BACKGROUND

Ms. Majors worked at GE's Bloomington plant for 32 years. In 2000, she suffered a work-related injury to her right shoulder that left her limited to lifting no more than twenty pounds and precluded her from work above shoulder level with her right arm. The restrictions were considered temporary at first, but according to her medical file maintained by GE, the restrictions later were determined to be permanent.

The Bloomington GE plant manufactures side-by-side refrigerators. The workforce dropped from 3,000 employees in 2000 to 750-800 employees in 2009. A collective bargaining agreement between GE and the union governs the terms and conditions of employment for the Bloomington plant hourly employees, including Ms. Majors. The CBA requires that vacant temporary or

permanent positions be awarded to the most senior eligible employee who bids on the position. The onsite medical clinic, which is operated by a third party, received notice of a job award. The clinic staff reviews the position and the employee's medical file to decide whether any restrictions affect the employee's ability to perform the position, and if so, whether the restrictions can be accommodated. The clinic staff informs GE's human resources department whether the employee is medically qualified for the position. The position goes to the next most senior bidder if the employee isn't medically qualified.

Ms. Majors held several different positions at the plant, including a stint as a purchased material auditor from December 2000 to June 2001. She worked as a quality control inspector in Assembly, performing quality audits on refrigerators, from February 2003 until her retirement in October 2009.

In May 2009, Ms. Majors was the senior eligible bidder for a temporary purchased material auditor position. A purchased material auditor inspects, tests, and audits a variety of purchased components and internally manufactured parts for conformance to engineering specifications and quality standards before the component or part is released to production or shipment. The position requires "intermittent movement of heavy objects," which is the focus of this dispute. Lead Occupational Health Nurse Toni Kristoff reviewed the job award and noted that Ms. Majors had permanent lifting restrictions and the job description required intermittent

movement of heavy objects. Ms. Kristoff discussed the position's lifting requirements with Labor Resources Manager Linda Schneider and discovered that lifting more than twenty pounds was an essential function of the position. Consequently, Ms. Kristoff determined Ms. Majors was not medically qualified for that position.

Ms. Majors let management know that she believed she could perform the auditor position. GE further investigated the position's requirements and whether Ms. Majors's lifting restrictions could be accommodated. A group that included Ms. Kristoff, Ms. Schneider, and an ergonomic technical specialist reviewed the auditor job description and visited the work area. The group discussed the position's requirements with a current auditor and the manager of the auditors, both of whom confirmed that lifting parts and material weighing more than twenty pounds was an essential function of the position. Ms. Schneider and the ergonomic specialist weighed objects the auditor had to lift and confirmed the objects weighed more than twenty pounds. A nurse practitioner reviewed and corroborated Ms. Kristoff's conclusion that Ms. Majors wasn't medically qualified for the position. Ms. Kristoff and the ergonomic specialist discussed the position's lifting requirements with Ms. Majors, who suggested that a material handler could do the lifting. Ms. Majors testified in her deposition that she repeatedly told Ms. Kristoff that the lifting restrictions no longer limited her.

GE decided Ms. Majors couldn't perform an essential function of the auditor position because of her per-

manent lifting restrictions, and the company gave the job to the next most senior eligible bidder. Ms. Majors filed a charge of discrimination with the EEOC on May 22, 2009 alleging she was denied the temporary auditor position because of her disability (in violation of the ADA) and her sex (in violation of Title VII).

Ms. Majors claims that as a result of filing her EEOC charge, she was denied overtime hours and the opportunity to work on "lack of work" Fridays. A "lack of work" day occurs when no production is scheduled at the plant and few employees are scheduled to work. Ms. Majors emphasizes the difference between her overtime hours worked and "lack of work" Friday assignments compared to those of three other quality control inspectors at the plant and her replacement. In 2009, GE offered a special early retirement program that required eligible employees to elect to participate by August 31, 2009. Ms. Majors claims that seven days before the deadline, shortly after returning from her mother's funeral, she chose to participate in the program and retire in November 2009 due to the discrimination and retaliation.

In October, after she had elected to retire but before her retirement began, Ms. Majors applied for and, as the senior eligible bidder, was awarded a permanent auditor position. Ms. Kristoff again reviewed the award and confirmed with the auditor supervisor that the position's lifting requirements hadn't changed. Ms. Kristoff determined Ms. Majors wasn't medically qualified for the auditor position, and the job went to the next most senior eligible bidder.

Ms. Majors filed a second charge of discrimination on March 30, 2010 alleging that she was denied the permanent auditor position because of her disability and sex. Ms. Majors also alleged retaliation and constructive discharge. Ms. Majors filed suit, alleging that by not awarding her either the temporary or permanent auditor position, GE discriminated against her in violation of the ADA and Title VII. Ms. Majors claimed GE retaliated against her, violating Title VII, by denying her overtime hours and the chance to work Fridays that were "lack of work" days. Ms. Majors also alleged GE constructively discharged her when she retired. The district court granted GE summary judgment as to all of Ms. Majors's claims, and Ms. Majors appeals the district court's decision with the exception of her Title VII discrimination claim.

## II. STANDARD OF REVIEW

We review a district court's decision to grant summary judgment *de novo*. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir. 2002). Summary judgment is appropriate if "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56. Although intent and credibility are often critical issues in employment discrimination cases, no special summary judgment standard applies to such cases. *Alexander v. Wisconsin Dep't of Health & Family Serv.*, 263 F.3d 673, 681 (7th Cir. 2001). In an employment discrimination case, as in any case, "we must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party."

*Goetzke v. Ferro Corp.*, 280 F.3d at 774; *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. DISCUSSION

### A. ADA Discrimination

Ms. Majors first contends the district court improperly granted summary judgment on her claim that GE discriminated against her when she wasn't promoted to a purchased material auditor position due to her permanent work restrictions. The ADA proscribes an employer from "discriminat[ing] against a qualified individual on the basis of disability" in job application procedures and in the hiring or advancement of employees. 42 U.S.C. § 12112(a). Depending on the issues raised by a summary judgment motion, an ADA plaintiff must identify a genuine issue of material fact as to whether (1) she is disabled; (2) she is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 622 (7th Cir. 2012). Ms. Majors argues that she was disabled within all three definitions of disability under the ADA.

Disability is defined as "(A) a physical or mental impair-
ment that substantially limits one or more major life
activities of [the] individual; (B) a record of such an
impairment; or (C) being regarded as having such an
impairment." 42 U.S.C. § 12102(1). Ms. Majors ap-
plied for and was denied the purchased material
auditor positions in 2009, so the amended ADA ap-
plies to Ms. Majors's allegations. Lifting is a major life
activity under today's law. 42 U.S.C. § 12102(2)(A); ADA
Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat.
3553 (2008). Relying on pre-amendment case law,[1] the
district court concluded that a physical impairment that
resulted in a permanent twenty pound lifting restriction
didn't substantially limit Ms. Majors's lifting ability.
Ms. Majors argues that the amendments broadened the
scope of the ADA's definition of disability, so we should
disregard pre-amendment precedent and reconsider
whether a permanent twenty pound lifting restriction
is a substantial limitation. At her deposition, however,

---

[1] The district court cited *Serednyj v. Beverly Healthcare, LLC*, 656
F.3d 540, 555 (7th Cir. 2011) ("Indeed, the inability to do
heavy lifting is not a substantial limitation as compared to the
average person."); *Zahurance v. Valley Packaging Indus., Inc.*, 397
F. App'x 246, 248 (7th Cir. 2010) (lifting restriction of no
more than thirty-five pounds on an occasional basis and twenty
pounds on a regular basis prior to amendments was insuf-
ficient to establish a substantial limitation to a major life
activity); *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002),
*abrogated on other grounds by EEOC v. United Airlines, Inc.*,
693 F.3d 760 (7th Cir. 2012) (ten pound lifting restriction
is not a disability).

Ms. Majors testified that she wasn't limited by the twenty pound lifting restriction, and in her summary judgment response, she conceded that the lifting restriction didn't apply to her. We don't need to decide whether Ms. Majors has a disability, though, because there was no issue of fact as to whether Ms. Majors was a qualified individual, entitling GE to summary judgment on the ADA claim.

A qualified individual under the ADA is a person with a disability who is able to perform the essential functions of the job either with or without reasonable accommodation. 42 U.S.C. § 12111(8); s*ee also Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). Ms. Majors contends she was a qualified individual because she could lift objects weighing more than twenty pounds with reasonable accommodation, but GE failed to accommodate her restriction.

First, "[t]o determine whether a job function is essential, we look to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(n)(3)). GE asserted that lifting objects weighing over twenty pounds is an essential function of the auditor position. When Ms. Majors expressed her belief that she could perform the auditor position, GE carefully evaluated the position's lifting requirements. The auditor job description requires "intermittent movement of heavy objects," and an employee who held the purchased material auditor

position and the manager of the others holding the position both confirmed that lifting parts and material weighing over twenty pounds is an essential part of the job. GE's labor resources manager and an ergonomic technical specialist weighed objects a purchased material auditor would be required to lift, such as compressors and boxes of screws, and verified that the objects weighed more than twenty pounds. A second nurse reviewed and confirmed Ms. Kristoff's conclusion that Ms. Majors wasn't medically qualified for the position. We agree with the district court that lifting objects weighing more than twenty pounds is an essential function of the purchased material auditor position.

As a result of Ms. Majors's permanent restriction prohibiting her from lifting more than twenty pounds, Ms. Majors couldn't perform an essential function of the auditor position without accommodation. Ms. Majors bears the burden of establishing that she could perform the essential functions of the position with or without reasonable accommodation, and can't meet this burden if the only accommodations suggested were unreasonable. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010).

The only accommodation Ms. Majors proposed was to have a material handler lift the heavy objects for her.[2] To have another employee perform a position's essential

---

[2] Ms. Majors hasn't argued on appeal that GE, to provide a reasonable accommodation, had to "try and see" if she could perform the purchased material auditor job despite her medical records.

function, and to a certain extent perform the job for the employee, is not a reasonable accommodation. *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (employee's suggested accommodation of hiring a helper to perform an essential function of the job, the overhead work required by the position, was not a reasonable accommodation). We agree with the district court that a material handler doing the heavy lifting for Ms. Majors wasn't a reasonable accommodation and so isn't required under the ADA.[3] *Gratzl v. Office of Chief Judges*, 601 F.3d at 681. Ms. Majors hasn't met her burden of establishing that she could perform the purchased material auditor position with a reasonable accommodation. She hasn't pointed to evidence sufficient to allow a fact-finder to decide that she is a qualified individual; without this element, summary judgment is appropriate for her discrimination claim.

Ms. Majors frames her argument as a failure to accommodate claim, alleging that GE failed to provide her a reasonable accommodation. She argues that GE had the burden to prove that her proposed accommodation of another employee's doing the heavy lifting would be an undue hardship on the business. This argument ignores that this record won't allow a finding that she is a qualified individual. An ADA plaintiff can establish

---

[3] Circumstances might exist when employees working in teams are able to share duties among themselves, so that such sharing might be a form of reasonable accommodation. *See Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 199-200 (7th Cir. 2011). That is not today's case.

discrimination by showing the employer failed to accommodate the employee, but she first must establish that she is a qualified individual with a disability. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). The defendant has the burden to prove that the accommodation would create an undue hardship on the business, but the plaintiff must first "show that the accommodation [she] seeks is reasonable on its face." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002) (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002)). The accommodation Ms. Majors seeks—another person to perform an essential function of the job she wants—is, as a matter of law, not reasonable, so GE isn't required to show the accommodation would create an undue hardship. Ms. Majors hasn't pointed to evidence that could support a finding that she was a qualified individual; without that, she can't show that GE failed to provide a reasonable accommodation.[4] *Gratzl v. Office of Chief*

---

[4] The amendments to the ADA clarified that employers needn't provide reasonable accommodation to a "regarded as" disabled individual. 42 U.S.C. § 12201(h). Before the amendments, the statute was silent, and we hadn't resolved whether such a duty existed for "regarded as" disabled individuals. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011). Ms. Majors and GE dispute whether GE had a duty to accommodate Ms. Majors if she had a "record of" disability because the amended statute remains silent as to whether a duty exists for individuals with a "record of" disability. We

(continued…)

*Judges*, 601 F.3d at 681 ("To be entitled to a reasonable accommodation—and thus to prove that the defendant failed to provide such a reasonable accommodation—[the plaintiff] has the burden of establishing that she is a 'qualified individual with a disability' under the ADA.").

Ms. Majors further argues that the process to determine whether a reasonable accommodation existed was not interactive, that GE flatly rejected her proposed accommodation and didn't suggest a counter-proposal, and that GE didn't consider the use of lifting devices as an accommodation. An interactive process between the employer and the employee is meant "to determine the appropriate accommodation for a qualified individual with a disability." *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(o)(3)). This record wouldn't allow a finding that Ms. Majors was a qualified individual, so whether the discussion between GE and Ms. Majors was sufficiently interactive is immaterial. Ms. Majors can't satisfy the second element of a discrimination claim, and GE is entitled to summary judgment on that claim.

---

[4] (...continued)
don't decide whether an employer must provide a reasonable accommodation to an individual with a "record of" disability because Ms. Majors can't establish that a reasonable accommodation existed. The analysis need not proceed to whether the employer was required to accommodate Ms. Majors with a hypothetical reasonable accommodation.

Finally, Ms. Majors contends that GE's reason for not awarding her the auditor position was pretextual.[5] If a plaintiff establishes a prima facie case of discrimination under the ADA, the employer must offer a lawful, nondiscriminatory reason for its adverse employment action. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001). Once a defendant meets this burden, the plaintiff has the burden of showing the proffered reason is actually a pretext for discrimination. *Id.* Ms. Majors points to no evidence that would allow a trier of fact to determine that she was a qualified individual, so she hasn't established a prima facie case of discrimination. We need not address Ms. Majors's pretext argument. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 798 (7th Cir. 1995).

## B. Title VII Retaliation

Ms. Majors argues that the district court erred by granting summary judgment on her retaliation claim.

---

[5] As evidence of pretext, Ms. Majors contends that she repeatedly told management that her lifting ability was no longer restricted, and the company failed to re-evaluate the permanency of her restriction. Ms. Majors received a 12% permanent partial impairment rating and corresponding cash payment in 2001 when her worker's compensation claim was closed. If the doctor has given an employee a permanent work restriction and the employee has been paid worker's compensation benefits based on a permanent restriction, the employee's lay opinion that the restriction should no longer apply isn't sufficient to raise a genuine issue of material fact.

She maintains that after she filed her May 22, 2009 EEOC charge, GE subjected her to retaliation by denying her overtime hours and the opportunity to work certain Fridays known as "lack of work" days.

We first must determine the scope of Ms. Majors's retaliation claim.[6] GE argues that Ms. Majors's claim is limited to GE's conduct beginning 300 days before her March 30, 2010 EEOC discrimination charge was filed. A plaintiff must file a charge of discrimination with an appropriate agency before she can file a lawsuit invoking the protections of Title VII. 42 U.S.C. § 2000e-5(e)(1); *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). An Indiana plaintiff has 300 days from the date of the conduct at issue to file an EEOC discrimination charge. *Id.* ("Indiana is a 'deferral state,' meaning it has a state agency with enforcement powers parallel to those of the EEOC."). A charge filed beyond the 300-day period is untimely and barred. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). A Title VII complaint generally is limited to the claims asserted in the underlying EEOC discrimination charge. *Weiss v.*

---

[6] Ms. Majors's complaint asserted her retaliation claim under Title VII and not the ADA. Although the standards and elements of retaliation claims under Title VII and the ADA are similar, *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998), and Ms. Majors shifts to an ADA retaliation claim in her appellate brief, we will analyze Ms. Majors's claim under the Title VII retaliation framework that she pleaded in her complaint and under which the district court analyzed her claim.

*Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993).

Ms. Majors counters that GE's conduct was a pattern and practice, so her claim isn't limited by the statute of limitation. A pattern and practice claim requires proof of discrimination against a protected group, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012), but Ms. Majors offers no evidence or argument to suggest a protected group was subject to discrimination or retaliation. Ms. Majors's retaliation claim was subject to the 300-day statute of limitation, and her second EEOC charge was filed 311 days after her first EEOC charge was filed. Consequently, the district court concluded that Ms. Majors's retaliation claim was limited to GE's conduct during the 300-day period before the second EEOC charge was filed, i.e., from June 3, 2009 forward. We agree.

A Title VII plaintiff can prove retaliation under either the direct or indirect method. *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d 772, 784 (7th Cir. 2007). The direct method requires proof that (1) the employee engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the two. *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d at 784-85. The indirect method requires proof that (1) the employee engaged in statutorily protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage

in statutorily protected activity. *Id.* at 785. Ms. Majors claims she can prove GE retaliated against her under both methods.

The parties don't dispute that Ms. Majors engaged in a protected activity when she filed a charge of discrimination with the EEOC. Ms. Majors claims her job performance was rated as satisfactory, and that she was subject to an adverse employment action when GE denied her overtime hours and the opportunity to work "lack of work" Fridays. The parties dispute whether Ms. Majors has established a causal link between the protected activity and the adverse employment action or offered evidence of similarly situated employees.

Ms. Majors first points to the closeness in time between the date she filed the EEOC charge and the alleged retaliation. She argues that she received less overtime hours and "lack of work" Friday assignments than other quality control inspectors in the plant from June to October 2009, a time period that began less than two weeks after she filed the EEOC charge and ended when she retired. Closeness in time between the protected activity and the adverse employment action is evidence of the causal link between the two events, *Lang v. Illinois Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004), but to survive summary judgment, the plaintiff must offer more evidence that supports the inference of a causal link between the two events than simply close temporal proximity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006).

Ms. Majors emphasizes the difference between the actual overtime hours and "lack of work" Fridays she worked compared to other inspectors and her replacement. From June through October 2009, Ms. Majors worked 14.6 overtime hours. For comparison, Ms. Majors cites the overtime hours, from the same time period, of three people holding inspector positions: Ricky May, 147.6; Rodney Ira, 139.6; and Barry Taylor, 11.9. Her replacement, Cheryl Abram, worked 75.1 overtime hours from June to October 2010. Quality control inspectors worked the following number of Fridays from June to October 2009: Ms. Majors, three; Mr. May, five; Mr. Ira, seven; and Mr. Taylor, five. During the same time period in 2010, Ms. Majors's replacement, Ms. Abram, worked fourteen Fridays.

Comparison of the overtime hours and "lack of work" Fridays Ms. Majors worked in 2009 to those her replacement worked the following year establishes only that Ms. Majors was assigned fewer hours than her replacement. Many other factors, including the lapse in time, might have caused the disparity between the numbers. A more valuable comparison can be made between Ms. Majors's overtime hours and those worked by other quality control inspectors in the plant during the same period of time. A startling difference emerges among the overtime hours assigned quality control inspectors Mr. May (147.6) and Mr. Ira (139.6) and those assigned to Ms. Majors (14.6) and Mr. Taylor (11.9). Ms. Majors had significantly fewer overtime hours than Mr. May and Mr. Ira, but her hours were slightly higher than Mr. Taylor's hours (14.6 compared to 11.9). Ms. Majors

worked the fewest "lack of work" Fridays among the quality control inspectors (three compared to five and seven), but that discrepancy is marginal. A calendar shows there were twenty-two Fridays from June to October 2009, but the summary judgment record doesn't reveal the number of "lack of work" Fridays during that period. One quality control inspector worked more than twice the number of Fridays Ms. Majors worked—seven compared to three—and two quality control inspectors worked two additional days.

When examined in context, the assignment to Ms. Majors of less overtime hours than two of her co-workers and fewer "lack of work" Fridays than three of her coworkers during the months after she filed an EEOC charge doesn't amount to sufficient evidence to support an inference of causation. Ultimately, Ms. Majors argues that the adverse employment action itself is evidence of a causal link between Ms. Majors's protected activity and the adverse employment action, receiving less overtime hours and "lack of work" Fridays. "There is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method," *Tomanovich v. City of Indianapolis*, 457 F.3d at 665, but Ms. Majors didn't identify evidence sufficient to create an issue of fact as to whether the protected activity was the cause of the alleged adverse employment action.

Employees typically are similarly situated if they had the same supervisor, were subject to the same employment standards, and engaged in similar conduct. *South*

*v. Illinois Env't Prot. Agency*, 495 F.3d 747, 752 (7th Cir. 2007). But the similarly situated analysis is flexible, and the result depends on any relevant factors and common sense. *Id.* "[S]ufficient commonalities on the key variables between the plaintiff and the would-be comparator [are required] to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Id.* (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

Ms. Majors held a quality control inspector position in 2009, and she argues that all quality control inspectors in the Bloomington plant were similarly situated employees, especially her replacement, Cheryl Abram. Ms. Majors offers no evidence that all the inspectors were similarly situated employees, or why her replacement in particular was similarly situated. GE contends that Ms. Majors was the only inspector who reported to her supervisors, Gary Hamilton and Amine Karoud, and the only inspector in her cost center and area of the plant. According to GE, two quality control inspectors Ms. Majors uses as comparators (Ricky May and Rodney Ira) had different job classifications than Ms. Majors, Barry Taylor, and Cheryl Abram; neither party presented any evidence about the difference between the job classifications. Ms. Majors didn't suggest the other quality control inspectors had the same supervisor or offer any other common attribute among the quality control inspectors. Ms. Majors has pointed to no evidence, apart from the job title, to support her contention that the employees were similarly situated

to her or that would allow a reasonable trier of fact to conclude that GE treated other inspectors differently than Ms. Majors. Accordingly, we agree with the district court that Ms. Majors's retaliation claim can't survive summary judgment under the indirect method of proof.

We agree with the district court that Ms. Majors has offered no evidence that would allow her retaliation claim to survive summary judgment under either the direct or indirect method of proof.[7]

Ms. Majors also asserts that the difference between the hours worked by Ms. Majors, her replacement, and other inspectors at the plant is evidence of pretext. Ms. Majors argues that evidence of pretext, when combined with temporal proximity, is sufficient additional evidence of causation to survive summary judgment under the direct method, and cites Third and Tenth Circuit case law to support her argument. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000); *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003). But Ms. Majors didn't offer sufficient evidence to show that GE's proffered reasons for the overtime and "lack of work" Friday assignments were pretextual. A

[7] Because Ms. Majors didn't establish a prima facie case of retaliation under either the direct or indirect method, we need not reach GE's argument (that the district court didn't address) that Ms. Majors's retaliation claim lacked merit because she didn't offer any evidence that her supervisors, who were responsible for the retaliatory conduct, were aware that she had filed an EEOC charge of discrimination.

defendant has the burden to offer a non-discriminatory reason for the adverse employment action, typically after the plaintiff establishes a prima facie case of retaliation. *Nichols v. Southern Illinois Univ.-Edwardsville*, 510 F.3d at 785. The burden then shifts back to the plaintiff, who must establish the proffered reason was pretextual. *Id*.

With respect to the discrepancy found in the time records, GE claims that the CBA directs the procedure used to distribute overtime hours among hourly employees. GE groups employees who perform similar work into a cost center. According to GE, the cost center's supervisor has the discretion to determine whether overtime is required and the employees who will perform the work. GE claims that Ms. Majors's supervisors decided that overtime and "lack of work" Fridays were unnecessary, and they were trying to control costs. GE says the CBA requires that the distribution of overtime hours be equalized among the employees within a job classification on the same shift in the cost center. According to GE, hourly employees don't work on a "lack of work" day unless the employee is brought in for a specific purpose such as preventative maintenance, and the Bloomington plant experienced many "lack of work" days in 2009. GE claims the reason for the inconsistency in the overtime assignments was that Mr. May and Mr. Ira, although quality control inspectors, had a different job classification (9018), while Ms. Majors and Mr. Taylor were both within the job classification 9014. GE's explanation constitutes a non-discriminatory

reason for the overtime hour and "lack of work" Friday assignments reflected in the time records.

An employer's proffered non-discriminatory reason for the adverse employment action is pretextual if it was a lie. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008). As evidence of pretext, Ms. Majors claims GE didn't adhere to the CBA overtime distribution procedure and points to GE's time records to support her claim. Ms. Majors emphasizes that she testified at her deposition that the procedure provided by the CBA was "not the way it's ever been." She argues GE didn't offer any evidence about the CBA overtime distribution procedure or the difference between the job classifications. The most reasonable inference from these circumstances, she claims, is that GE denied her overtime hours and the opportunity to work "lack of work" Fridays because she filed an EEOC charge of discrimination.

GE's time records alone don't prove that GE didn't abide by the CBA as Ms. Majors claims. GE's explanation that the distribution of overtime hours is equalized under the CBA among employees within a job classification, and the quality control inspectors with the most overtime hours had a different job classification than Ms. Majors isn't patently false. Ms. Majors claims it isn't true, but offers nothing more. While GE didn't offer further details about why certain inspectors had different job classifications, it is Ms. Majors, the non-moving party, who must set forth sufficient evidence to survive summary judgment, and she has only offered

conclusory statements that the summary judgment record doesn't support. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). Ms. Majors hasn't offered sufficient evidence that GE fabricated its proffered non-discriminatory reason for the overtime and "lack of work" Friday distribution to establish pretext.

## C.  Constructive Discharge

Finally, Ms. Majors contends summary judgment was inappropriate for her claim that she was constructively discharged when she retired early due to extreme stress. On August 24, 2009, Ms. Majors chose to participate in a special early retirement program and retire in November of that year. The special early retirement option was a part of the national CBA and was offered to GE employees who were 55 years old or older and had worked for GE for twenty-five years or more. Eligible employees had to apply for the program by August 31. Ms. Majors contends she was under extreme stress and her working conditions were intolerable because she was denied the temporary auditor position, had been denied the opportunity to work overtime and "lack of work" Fridays, and was required to decide whether she would opt into the early retirement program within days of returning from her mother's funeral.

Ms. Majors doesn't contend, however, that GE's conduct violated any federal law, and she doesn't cite any rule of law that says an employer can't require an employee to make a decision about an early retirement program because the employee is under extreme stress.

We note that GE's decision not to award Ms. Majors the temporary purchased material auditor position was not the result of discrimination and GE's decision not to assign additional hours to Ms. Majors was not retaliation. Ms. Majors wasn't constructively discharged when she decided to retire early, and summary judgment was appropriate.

## IV. Conclusion

For the forgoing reasons, we affirm the district court's entry of summary judgment in favor of GE on all claims.