In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-1116

JOSE L. VARGAS,

*Plaintiff-Appellant*,

*v.*

LOUIS DEJOY, Postmaster General,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-05085 — **Charles R. Norgle**, *Judge*.

---

ARGUED SEPTEMBER 16, 2020 — DECIDED NOVEMBER 23, 2020

---

Before EASTERBROOK, MANION, and SCUDDER, *Circuit Judges*.

MANION, *Circuit Judge*. Jose Vargas, a mail carrier for the U.S. Postal Service, aggravated an old foot injury on the job in early 2011. He was placed on work restrictions that prohibited him from lifting and carrying heavy weights. This created a problem for Vargas because his duties included carrying heavy loads and packages. Vargas asked his employer for accommodations, but without any alternative jobs for him to do,

his request was denied. As a result, Vargas had to take paid sick leave for several weeks and eventually went on leave without pay.

Vargas sued his employer under Title VII and for disability-based discrimination. Apparently, his endgame is to restore the paid sick leave hours he took. He's not out any wages—he received backpay through workers' compensation for the time spent on leave without pay—and he still works for the Postal Service.

The district court granted summary judgment for the Postal Service. We affirm because Vargas could not perform the only job available to him, with or without a reasonable accommodation, and the record is devoid of evidence indicating he was treated differently because of his race or that he suffered unlawful workplace retaliation.

## I. Background

Vargas began working as a mail carrier for the Postal Service's Romeoville, Illinois, office in 2005. Mail carriers must be able to carry heavy weights, up to 35 pounds in their shoulder bags. Vargas's assigned route came with an additional duty of shuttling mail and equipment weighing up to 75 pounds between the post office and a satellite location.

Vargas sustained a foot injury on the job in 2008. He was diagnosed with plantar fasciitis as a result. He received medical treatment, submitted a successful claim for workers' compensation benefits, and continued working.

In January 2011, Vargas filed an EEO complaint that raised miscellaneous workplace grievances from 2010 and linked them to alleged race- and disability-related discrimination. He later withdrew this complaint.

Also in early 2011, Vargas's plantar fasciitis caused his foot pain to worsen. His doctor placed him on work restrictions, effective March 1 through March 22, 2011, that prohibited him from lifting or carrying items weighing more than 15 pounds.[1]

On March 14, 2011, when Vargas returned to work from a vacation, he wanted his route restructured to cut out lifting and carrying heavy loads. His superiors did not oblige and he applied for workers' compensation the next day. He also made daily requests to be assigned less strenuous work— "light duty"—from March 14 until March 22. But there was no light duty work available for him, so he had to take paid sick leave.[2]

Vargas, who is Hispanic, sued his employer for disability-based discrimination pursuant to the Americans with Disabilities Act. He also raised retaliation and racial discrimination claims under Title VII. The gist of Vargas's lawsuit: the Postal Service refused to reasonably accommodate his physical limitations, and it did so because he is Hispanic, because he filed an EEO complaint, or both. The alleged failure to accommodate occurred between March 14 and March 22, 2011, when

---

[1] Vargas's restrictions continued into the summer, though he could carry slightly heavier loads, up to 25 pounds, from late May through late July 2011.

[2] Vargas took paid sick leave from March 14 until June 27, 2011, with a few days of annual leave in May. Beginning June 27, he was placed on leave without pay. Vargas's workers' compensation application was approved October 26, 2011, and his pay dating back to June 27 was restored.

Vargas requested but was denied alternative work arrangements for his plantar fasciitis.[3]

The district court granted summary judgment for the Postal Service and Vargas appeals.

## II. Discussion

We review summary judgment *de novo*, asking whether a genuine dispute exists over any material fact. *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1102 (7th Cir. 2019).

The record reveals no triable issues. Vargas cannot demonstrate he was a qualified individual with a disability and nothing indicates he was subjected to racial discrimination or unlawful retaliation. These shortcomings prove fatal to his claims.

Vargas's failure-to-accommodate claim[4] requires him to prove (1) he was a qualified individual with a disability, (2) his employer was aware of his disability, and (3) his employer

---

[3] This date range matches that listed in Vargas's administrative complaint. At oral argument, Vargas's counsel confirmed this range as the relevant time period.

[4] We construe Vargas's Americans with Disabilities Act claim as one under the Rehabilitation Act because the former does not apply to federal workers. 42 U.S.C. § 12111(5)(B)(i) (defining covered employers but excepting the United States and corporations owned by the United States); *see also Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("The Rehabilitation Act, not the Americans with Disabilities Act (ADA), constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."). In any event, we resolve Rehabilitation Act claims by looking to the same standards and provisions that govern the Americans with Disabilities Act. *Jackson v. City of Chicago*, 414 F.3d 806, 810–11 (7th Cir. 2005).

failed to reasonably accommodate his disability. *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019).

Vargas fails to present any evidence that he was a "qualified individual with a disability" during the relevant eight-day timeframe. A qualified individual is one who can perform the "essential functions" of his position, with or without a reasonable accommodation. 42 U.S.C. § 12111(8); *Tonyan v. Dunham's Athleisure Corp.*, 966 F.3d 681, 687 (7th Cir. 2020).

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Whether a function is essential to the position is a question of fact, resolved by "consider[ing] the employer's judgment, including written job descriptions, as evidence." *Tonyan*, 966 F.3d at 687. We also examine the impact of not requiring the employee to perform the function. *Id.* at 688. We do not typically second-guess the employer's judgment on this call, though our deference is not absolute. *Id.* at 687–88 (citing *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998)).

Being able to carry bundles of mail weighing more than 15 pounds—Vargas's limit—is an essential function of a mail carrier's job. The purpose of a Postal Service mail carrier is to deliver and collect mail, per the agency's written job description. The description notes a carrier executing that duty "[m]ay be required to carry mail weighing up to 35 pounds in shoulder satchels or other equipment and to load or unload container [sic] of mail weighing up to 70 pounds."

Yet the district court reasoned a mail carrier's load might not always weigh 35 pounds, so it's ambiguous whether the ability to carry such weight is an essential function of the job.

The amount of time devoted to a particular function is not irrelevant. *Tonyan*, 966 F.3d at 688. Still, we have held "an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential." *Basith v. Cook Cnty.*, 241 F.3d 919, 929 (7th Cir. 2001). That Vargas might not always have to carry 35 pounds does not preclude that function from being essential to his job. *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002).

Consider the firefighter: while he may not often have to carry an unconscious adult from a burning building, failing to require that he ably perform this function when called upon would run counter to his duty to public safety. *See* 29 C.F.R. app. § 1630.2(n). The same logic applies to Vargas, though with less grave (hopefully) real-world ramifications. A mail carrier's lifting requirements are not optional. The consequence of being unable to lift, carry, or load heavy bundles and packages is simple though significant: the mail doesn't get delivered.

Vargas could not perform his job without accommodation because he was restricted to carrying no more than 15 pounds. Nor could he perform the same function even *with* the accommodations for which he asked. Vargas requested he either be limited to the "collections" portion of his route—driving from mailbox to mailbox collecting mail and no carrying of bags— or else be allowed to perform "light duty" work, i.e., less strenuous activity.[5]

---

[5] A postal employee injured on the job, like Vargas, may be assigned "light duty" tasks while his workers' compensation claim is reviewed. This allows the injured employee to keep working within his physical restrictions and avoid having to take paid sick leave. But light duty runs only so long as there are corresponding tasks available, so an employee is

The Postal Service rejected Vargas's reduced route idea and there was no light duty work for him to perform alternatively.

But Vargas's proposal was not *reasonable*. Allowing Vargas to perform only collections would force the Postal Service to assign an essential function of his job—carrying heavy mail bags and delivering their contents—to someone else. Employers need not reshuffle staff and resources if doing so would require reallocating an essential function from the plaintiff to another worker. *Peters*, 311 F.3d at 845–46 (holding requested accommodation unreasonable because it would require another employee to perform an essential function of plaintiff's job: lifting and carrying).

Nor was the Postal Service obligated to create light duty work for Vargas where none existed. *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (An employer need not "manufacture a job that will enable the disabled worker to work despite his disability."). And here, Vargas points to no evidence of light duty work available for him to perform within his lifting and carrying limitations between March 14 and March 22, 2011. He discusses four coworkers who worked while nursing injuries, although only one of them, John Choate, did so during the relevant timeframe in this case. But Choate is not a useful comparison because he was on "limited duty" status, not light duty status, as of March 15, 2011. In other words, unlike Vargas, Choate's workers' compensation claim had been accepted and therefore he was guaranteed 40 hours of

not guaranteed 40 hours of work per week while on light duty status. Indeed, an employee is not entitled to light duty work at all if there is none available. *See Hill v. Potter*, 625 F.3d 998, 1001, 1003 (7th Cir. 2010) (discussing "light duty" status).

pay per week while recovering. Moreover, Choate perform-
ing less strenuous tasks still does not prove similar work was
available for Vargas. Nothing indicates, for example, the post
office had light duty work from March 14 to March 22 that
went unperformed by anyone.

Vargas could not perform the essential functions of his job
on his own, and he put forth no reasonable accommodation
that would allow him to do so. Thus he was not a qualified
individual under the Rehabilitation Act and there remained
nothing for the jury to decide.[6] *Cf. EEOC v. Lee's Log Cabin,
Inc.*, 546 F.3d 438, 445–46 (7th Cir. 2008) (concluding plaintiff
was not a qualified individual where she proposed no accom-
modations for her lifting and carrying restrictions to prospec-
tive employer).

This element is Vargas's to prove. *Majors v. Gen. Elec. Co.*,
714 F.3d 527, 535 (7th Cir. 2013). Having failed to do so, he
cannot pin his claim (as he tries) to whether the Postal Service
denied him a reasonable accommodation. *Gratzl v. Office of
Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601
F.3d 674, 681 (7th Cir. 2010) ("To be entitled to a reasonable
accommodation—and thus to prove that the defendant failed
to provide such a reasonable accommodation—[plaintiff] has
the burden of establishing that [he] is a 'qualified individual
with   a   disability'   under   the   ADA.").   The   only

---

[6] Vargas does not contest this conclusion meaningfully. He asks us to
skip the qualified individual question altogether because he did not raise
it on appeal. We can affirm on any ground supported by the summary
judgment record. *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*,
919 F.3d 1003, 1008 (7th Cir. 2019).

accommodations proposed were unreasonable as a matter of law. Vargas's Rehabilitation Act claim cannot succeed.

We can dispense with Vargas's Title VII discrimination and retaliation claims quickly. The record contains no evidence—direct or circumstantial—that Vargas's hoped-for accommodations were denied because of his race. Nor does it provide a causal link between his protected activity (the January 2011 EEO complaint) and any alleged adverse employment action, as required. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Therefore, summary judgment was proper on Vargas's Title VII allegations, too.

We affirm.